EMMA DEMAY, Appellant, v. LIBERTY FOUNDRY COMPANY and TRAVELERS INSURANCE COMPANY.—37 S. W. (2d) 640.

Division One, March 31, 1931.*

---

*NOTE: Opinion filed January 5, 1931; motion for rehearing filed; motion overruled March 31, 1931.

496

*John P. Leahy* for appellant.

*Jones, Hocker, Sullivan & Angert* for respondents.

SEDDON, C.—This proceeding was instituted on January 20, 1928, by Emma DeMay (the appellant here), the widow and dependent of Albert DeMay, by filing with the Workmen's Compensation Commission of this State her written claim for compensation, wherein the Liberty Foundry Company, a corporation, was named

as the employer of Albert DeMay, and Travelers Insurance Company, a corporation, was named as the insurer of said employer, for the death of her husband, whose death is claimed by the said widow and dependent to have resulted from an injury suffered by her husband on August 30, 1927, by accident arising out of and in the course of her husband's employment by the named employer. The proceeding was instituted under the provisions and requirements of the Workmen's Compensation Act, enacted by the 53rd General Assembly, and approved by the Governor of this State on April 30, 1925, but which act, under and by virtue of Article 4, Section 57, of the Missouri Constitution, was referred to a vote of the people of this State, at an election held on November 2, 1926, and was duly adopted at such election by the requisite majority of the votes cast thereon. [Laws 1927, pp. 490 to 522, inclusive.]

The claimant, Emma DeMay, charged and alleged in her written claim for compensation, filed with the Workmen's Compensation Commission, that an accident and injury occurred to her husband, Albert DeMay, August 30, 1927, and that: "Employee (Albert DeMay) was turning a casting, when he felt a sharp pain in his groin; that a hernia appeared suddenly, accompanied by intense pain; the hernia immediately followed the accident; that the hernia did not exist in any degree prior to the accident, and that the hernia was the result of the strain (the turning of the casting). Employee was operated on for the above hernia on December 5, 1927, and died as the result of this operation." Claimant prayed an award of compensation from the employer and its insurer in the aggregate sum of $5100, computed upon the basis of 66⅔ per cent of the employee's average weekly earnings (alleged as $25.50) during the year immediately preceding the alleged injury, multiplied by 300, as provided in Section 21 (b) of the Workmen's Compensation Act.

On February 9, 1928, the employer and the insurer filed with the Workmen's Compensation Commission their joint written answer to the claim for compensation, wherein it was specifically denied that the employee, Albert DeMay, sustained an accident and injury arising out of and in the course of his employment, and denied that the death of Albert DeMay resulted from an accident and injury arising out of and in the course of his employment.

Thereafter, on March 15, 1928, a hearing upon the claim for compensation was had before Hon. Evert Richardson, a member of the Workmen's Compensation Commission, at the St. Louis office of the Commission, wherein the claimant, the employer and the insurer appeared in person or by representatives.

Thereafter, on June 23, 1928, the said Evert Richardson, member of the Workmen's Compensation Commission, after hearing the respective parties, their representatives, witnesses and evidence, made and filed with the record of said proceedings a finding of facts and

an award, wherein the said member of the Workmen's Compensation Commission found in favor of the employer and the insurer, and against the claimant, Emma DeMay, and awarded no compensation to the complainant. The finding of facts returned and filed by the said member of the Compensation Commission was to the effect that there was no accident which had been suffered by the employee, Albert DeMay, and that "the evidence in this case does not show that deceased employee's death was caused by an injury received in an accident arising out of and in the course of his employment;" wherefore, the claimant's claim for compensation was denied.

In due time, and on June 26, 1928, the claimant, Emma DeMay, filed with the Workmen's Compensation Commission an application for review and on July 30, 1928, the claimant filed with the Commission a written request for submission on review, requesting the Commission to determine the matter upon the record as it then stood, without further evidence or argument.

On October 9, 1928, the full membership of the Workmen's Compensation Commission, on review, affirmed the findings, statement, rulings and award of the said Evert Richardson, dated and filed on June 23, 1928, and the full Commission made and filed with the record of proceedings a final award, wherein the findings of the full Commission likewise were in favor of the employer and the insurer, and against the claimant, Emma DeMay, and no compensation was awarded to claimant.

In due time, and on October 30, 1928, the claimant filed with the Workmen's Compensation Commission a notice of appeal from the final award, or order, of the full Commission to the Circuit Court of the City of St. Louis, whereupon the Workmen's Compensation Commission, under its proper certificate, returned to the Circuit Court of the City of St. Louis all documents and papers on file in the said proceeding, together with a transcript of the evidence, the findings and the award, all of which were duly filed in said circuit court on December 5, 1928.

The proceeding came on for hearing, on appeal, on July 3, 1929, in Division No. 2 of the Circuit Court of the City of St. Louis, Hon. Moses N. Sale, then a judge of said court, presiding in said Division of the circuit court, whereupon counsel for the claimant moved for, and requested and demanded, a trial *de novo* in the circuit court, independently of the evidence had before the Workmen's Compensation Commission, and independently of the rulings, findings and the award of the Commission, counsel for claimant asserting and insisting upon the right to proffer new and additional evidence in support of the claim for compensation. The aforesaid motion, request and demand of claimant were denied by the circuit court, and claimant was allowed to save, and did save, an exception to the action and ruling of the circuit court thereon. Thereupon coun-

sel for claimant stated to the circuit court: "I am not offering the evidence taken before the Workmen's Compensation Commission and incorporated in the transcript filed by the Commission, but I might mention that the evidence shows that the plaintiff and claimant is the lawful widow of Albert DeMay, the deceased mentioned in the claim for compensation; that said Albert DeMay was employed by the Liberty Foundry Company, defendant herein, for several years preceding the 30th day of August, 1927; that his employment consisted in striking off parts of iron castings which had been poured into a mold, and being an overflow of the molten iron and which were known as 'gates;' that these 'gates' were knocked off by the deceased with a heavy hammer and then loaded into a wheelbarrow; that, when so loaded, the wheelbarrow weighed from 200 to 300 pounds; that the deceased, on and previous to August 30, 1927, when he ceased to work for the defendant, Liberty Foundry Company, was suffering from an inguinal hernia; that he underwent an operation for the removal of the hernia at the City Hospital, and after the operation died on December 25, 1927. The transcript also shows that there was no direct evidence that the hernia from which the deceased suffered was caused from an injury received while in the employ of the defendant, Liberty Foundry Company, and I do not see the necessity, therefore, for incorporating the testimony before the Commission—which is very voluminous—in this record as we have confined ourselves to merely demanding a trial *de novo* before your Honor, sitting as a jury in this case. . . . In this connection, your Honor, I would like to offer evidence showing that the injury was sustained in the course of the employment, and I have several witnesses by whom I expect to prove that fact. I shall call the plaintiff and claimant."

The claimant being called to testify as a witness in the circuit court, objection was made by the employer and the insurer to any new and additional evidence being proffered in the circuit court, upon an appeal from the final award or order of the Workmen's Compensation Commission, which objection was sustained by the circuit court. Thereupon counsel for claimant offered to prove by claimant, and by other witnesses, that "the deceased, Albert DeMay, died from a hernia sustained by him while in the employment of the defendant, Liberty Foundry Company," which offer of proof was objected to by the employer and insurer, and which objection was sustained by the circuit court.

Thereupon, and on July 3, 1929, the circuit court made and entered herein the following judgment:

"The court, having seen and duly considered the transcript of testimony had before the Workmen's Compensation Commission of the State of Missouri, together with all the records and proceedings

in the cause, and being sufficiently advised of and concerning the premises, doth find that on the 23rd day of June, 1928, said Commission made the following findings, to-wit: 'That there was no accident as alleged on the 30th day of August, 1927, at the alleged place, St. Louis, Missouri.' Wherefore, it is considered, adjudged and decreed by the court that the findings of the Missouri Workmen's Compensation Commission be, and the same are, in all things hereby affirmed at the cost of claimant, Mrs. Emma DeMay, for which let execution issue.''

After a timely but unavailing motion for a new trial, the claimant was allowed and granted an appeal to this court from the judgment of the circuit court. This court retains jurisdiction of the instant appeal because of the several constitutional questions raised by claimant during the course of the hearing in and before the circuit court, and again raised in claimant's motion for a new trial, and saved and preserved by proper bill of exceptions signed, allowed, and duly filed in the circuit court; wherefore, the proceeding is one ''involving the construction of the Constitution of the United States or of this State,'' whereof this court has exclusive appellate jurisdiction. [Art. 6, sec. 12, Mo. Constitution.]

I. In order the better to comprehend and rule the several questions asserted and presented by the claimant upon this appeal touching the constitutionality of the Missouri Workmen's Compensation Act (Laws 1927, pp. 490-522) or a part thereof, we deem it advisable, at the outset, to refer to and quote certain pertinent sections and provisions of that act.

Section 2 of the act provides: ''Every employer and every employee, except as in this act otherwise provided, shall be conclusively presumed to have elected to accept the provisions of this act and respectively to furnish and accept compensation as herein provided, unless prior to the accident he shall have filed with the commission (Workmen's Compensation Commission) a written notice that he elects to reject this act. . . .''

Section 3 of the act provides: ''If both employer and employee have elected to accept the provisions of this act, the employer shall be liable, *irrespective of negligence,* to furnish compensation under the provisions of this act for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The rights and remedies, herein granted to an employee, shall exclude all other rights and remedies of such employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this act. . . .''

Section 7 of the act defines the terms, or words, "accident," "injury," and "death," as used in the act, as follows: "The word 'accident' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, *with or without human fault,* and producing at the time, objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. . . . 'Death,' when mentioned as a basis for the right to compensation, means only death resulting from such violence and its resultant effects occurring within three hundred weeks after the accident."

Section 17 of the act provides, *inter alia*: "In all claims for compensation for hernia resulting from injury arising out of and in the course of the employment, it must be definitely proved to the satisfaction of the commission: First, that there was an accident resulting in hernia; second, that the hernia appeared suddenly, accompanied by intense pain; third, that the hernia immediately followed the accident; fourth, that the hernia did not exist in any degree prior to the accident resulting in the injury for which compensation is claimed."

Section 44 of the act provides: "The final award of the commission shall be conclusive and binding unless either party to the dispute shall within thirty days from the date of the final award *appeal to the circuit court* of the county in which the accident occurred, or if the accident occurred outside of this State, then in the county where the contract of employment was made. Such *appeal* may be taken by filing notice of appeal with the commission, whereupon the commission shall under its certificate return to the court all documents and papers on file in the matter, together with a transcript of the evidence, the findings and award, which shall thereupon become the record of the cause. *Upon appeal no additional evidence shall be heard, and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law,* and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds *and no other*:

"1. That the Commission acted without or in excess of its powers.

"2. That the award was procured by fraud.

"3. That the facts found by the commission do not support the award.

"4. That there was not sufficient competent evidence in the record to warrant the making of the award.

"Appeal from the circuit court shall be allowed the same as in civil actions and all appeals to the circuit court and appellate courts

shall have precedence over all other cases except election contests. . . . ʼʼ (Above italics our own.)

It is unquestionable that the Workmen's Compensation Act of our State is not in any sense compulsory, but it is wholly elective or voluntary; that is to say, neither an employer nor an employee is ▇▇▇ ▇▇▇ *compelled* to accept, or to become subject to, the provisions and requirements of such act, but either an employer or an employee may reject the act, by merely filing with the Workmen's Compensation Commission a written notice to such effect. [Sec. 2, supra.] Moreover, compensation under the act is payable by the employer who has elected to accept the provisions of the act, and is recoverable by the employee who has likewise elected to accept the provisions of the act, or by the dependents of a deceased employee, wholly irrespective of any actionable negligence upon the ▇▇▇ part of the employer, whether under the rules of the common law or otherwise, and regardless of whether the accidental injury to the employee, for which compensation is awardable, occurs with or without human fault. [Secs. 3 and 7, supra.] At common law, an employer is actionably liable to his employee for injuries suffered by the employee while acting within the course and the scope of his employment only when the employer has been guilty of, and is chargeable with, some negligent act or omission on the employer's part which directly and proximately occasions the employee's injury; in other words, negligence upon the part of the master, or employer, is essential to his liability at common law for an injury sustained by the servant, or employee, and then only when the employee, at the time of his injury, is acting within the course and scope of his employment, and the employee's injury proximately and directly results from his employer's negligence, whether of commission or omission. [39 C. J. 259, 260; idem. 286.] Thus, it is to be readily seen that the Workmen's Compensation Act of our State gives to the employee a new right or remedy, not theretofore available under the rules of the common law, but which is granted to, and conferred upon, the employee for the first time in the jurisprudence of this State by the enactment and the ultimate adoption of the Workmen's Compensation Act by vote of the people of this State on November 2, 1926. As is said by Mr. Donald J. Kiser, in his recent and standard treatise on Workmen's Compensation Acts (to be found immediately following page 2880 of 40 Cyc.), section 4, pages 6 and 7, of said treatise: "The compensation acts are based on a new theory of compensation distinct from the existing theories of damages, the underlying conception being one of insurance. The liability created has no reference to negligence or tort, and the compensation awarded is intended neither as a charity nor as a penalty. The trend of authority is toward regarding the obligation as contractual or quasi-contractual, although

it has been said that critically considered it is more properly placed in a class by itself.''

Moreover, Section 21 (b) and (c) of the act creates a new right or remedy in favor of the dependents (total or partial) of an employee, in case the accidental injury to the employee causes his death within three hundred weeks after the accident, by providing for the payment of a death benefit, by way of compensation, payable by the employer to the dependents of the employee, which right or remedy was not theretofore available to the dependents of a deceased employee, under the rules of the common law or otherwise. Thus, it is obvious and plain that the Workmen's Compensation Act of this State is not supplemental or declaratory of any rule, right or remedy accorded by the common law to an employee, or to his dependents, but creates an entirely new right or remedy, in favor of an employee who has elected to accept the provisions of said act, or his dependents, which new right or remedy so created by the act is wholly substitutional in character, and supplants all other rights and remedies, at common law or otherwise, theretofore accorded to an employee or his dependents, except such rights and remedies as are not provided for by the Compensation Act. [Sec. 3, supra; Kemper v. Gluck (Mo. App.), 21 S. W. (2d) 922, 923.]

From the foregoing preliminary observations, we now proceed to a consideration and determination of the several questions touching the constitutionality of the Workmen's Compensation Act, as raised and presented herein by the appellant's assignments of error, which questions, so far as we are advised, are for the first time presented to this court for our consideration and determination. Hence, the decisions of the appellate courts of other and foreign jurisdictions, bearing upon like questions touching the constitutionality of workmen's compensations acts which are similar in force and effect to our own act, are, at least, strongly persuasive in the matter of our own determination of those constitutional questions as are raised and presented for decision by the appellant herein.

II. The claimant and appellant herein urges that our Workmen's Compensation Act, and particularly Section 44, supra, of said act, is unconstitutional in that the act contravenes Section 10, Article 2, of the Constitution of Missouri, which provides that ''the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice should be administered without sale, denial or delay;'' and in that it also contravenes Section 28, Article 2, of our State Constitution, which provides that ''the right of trial by jury, as heretofore enjoyed, shall remain inviolate.''

Section 10, Article 2, of our State Constitution is borrowed from Magna Charta, and is merely declarative of the right conferred by that ancient, yet memorable, document, and therein expressed by the simple clause: "We will sell to no man, we will not deny or defer to any man, either justice or right." [12 C. J. 1287.] This section of the organic law of our State has been construed and defined by this court to mean "only that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy." [Landis v. Campbell, 79 Mo. 433, 439.] The term "the law of the land" has been held by some courts, in its constitutional application and meaning, as referable to the common and statute law in force when the particular constitution was adopted. [City of Louisville v. Cochran, 82 Ky. 15, 22; State ex rel. v. Maxcy, 1 S. C. 501, 502; State ex rel. v. Simons, 2 S. C. 761, 764.] Other courts have held that the meaning of the term "the law of the land" cannot be so limited, for that would deny any power in the Legislature to amend or repeal old laws, or to enact new laws. [12 C. J. 1190, and cases there cited.] It is clear to our minds, however, that the constitutional guaranty accorded by the aforesaid section of our own organic law undoubtedly was intended to include and comprehend only such *wrongful* injuries to person, property or character as are actionable or remediable under the rules of the common law, or as such common-law rules have been amplified by statute or by judicial decision, and not to include and comprehend injuries occasioned without human fault, negligence or wrong. In so far, then, as the Workmen's Compensation Act affords a right and remedy to an employee for an injury occasioned without wrong, human fault or negligence, it seems clear that the act does not in any wise contravene the aforesaid section of our Constitution, for the reason that such an injury was never actionable or remediable in this State prior to the enactment and adoption of the Workmen's Compensation Act, and therefore is not such an injury as is included and comprehended by the said section of our Constitution.

Nor do we think that the Workmen's Compensation Act must be held invalid because in contravention of the constitutional right or guaranty accorded by Section 10, Article 2, of our Constitution, in that the act, by virtue of Section 3 thereof, is *exclusive* as to the rights and remedies therein granted to an employee, and specifically provides that the rights and remedies therein granted to an employee "shall exclude all other rights and remedies of such employee, . . . at common law or otherwise, on account of accidental death or injury, except such rights and remedies as are not provided for by this act." As we have said, the act is wholly elective and voluntary on the part of both the employer and the employee, and the employee may reject the act at any time prior to the accident occasioning his injury, in case of which elective rejection of

the act by the employee there is available to the employee any and every right or remedy afforded him, at common law or otherwise, for actionable injury suffered by the employee. As a general rule, an individual may waive the benefit of a constitutional right or guaranty, especially when no question of public policy or public morals is involved, and except in certain criminal proceedings in which the State, as well as the accused person, is directly interested. [6 R. C. L. 93; 12 C. J. 769.] Thus, an employee, by his own act or conduct in electing to accept the provisions of the Workmen's Compensation Act, must be deemed to have waived the benefit of the constitutional guaranty, and is precluded by his act or conduct from claiming the protection of the constitutional guaranty. [12 C. J. 769, and numerous decisions there cited.]

But the act also excludes all other rights and remedies of the dependents of an employee (as well as those of an employee), if and when the employee has elected to accept the provisions of the act. The question therefore arises whether the Workmen's Compensation Act infringes upon any constitutional right or guaranty accorded to the dependents of an employee by Section 10, Article 2, of our Constitution. We think the act does not contravene any constitutional right or guaranty accorded to the dependents of an employee. The aforesaid section of our Constitution insured to every individual, through the medium of the courts of the State, a remedy "for every injury to person, property or character." Such a right or remedy as that contemplated by the constitutional provision is personal, direct, and immediate, and inheres in the particular individual suffering the injury. The right or remedy of a dependent of an employee, for an injury suffered by, or for the death of, the individual upon whom he or she is dependent, is in a sense indirect and mediate. The latter right or remedy obviously does not arise out of, or from, any injury to *"person, property or character,"* which is the only class or kind of injuries for which the aforesaid section of our Constitution insures or guarantees a remedy through the medium of the courts of our State.

Mr. Kiser, in his comprehensive and authoritative treatise on Workmen's Compensation Acts, supra, Section 11, thus states the weight of judicial decision: "Notwithstanding the changes in fundamental doctrines, as to the liability of the employer for injuries to the employee, worked by the compensation acts, they are not for that reason invalid, for there is no vested right in any remedy for a tort yet to happen, and except as to vested rights the legislature has power to change or to abolish existing common-law or statutory remedies. Nor is a compensation act invalid for the reason that it creates a new remedy or abrogates an existing statutory right of action."

A compulsory Workmen's Compensation Law, applicable to certain hazardous employments, enacted by the Legislature of the State of Oklahoma, whereby the administration of the act was placed in a commission created by the act, and whereby all other and existing rights of action to recover damages for personal injuries are abrogated, and the jurisdiction of the courts of that State over such causes of action is abolished, was attacked upon the ground that the act contravenes the mandate of the Oklahoma Constitution that "the courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice." Said the Supreme Court of that State, in upholding the validity of the act as against such constitutional assault, in Adams v. Iten Biscuit Co., 63 Okla. 52, 57, 162 Pac. 938: "Addressing ourselves to the first question, it is contended that Section 6, Article 2 (of the Oklahoma Constitution), was intended to preserve a right of action in the courts of the State to persons for injuries that may happen in the future, and thereby prevent the Legislature from passing laws that abolish existing remedies for a cause of action recognized by the law at the time the Constitution was adopted, though the injury had not in fact occurred, nor the right of action vested prior to the passage of such law. . . . That this (provision of the Constitution) was a mandate to the judiciary, and was not intended as a limitation upon the legislative branch of the government, seems clear. Neither do we think it was intended to preserve a particular remedy for given causes of action in any certain court of the State, nor was it intended to deprive the Legislature of the power to abolish remedies for future accruing causes of action (where not otherwise specifically prohibited), or to create new remedies for other wrongs as in its wisdom it might determine. . . . It may be safely stated, as a general rule, that the citizen has no property in a rule of law, and that, while rights which have accrued to him under the operation of existing laws and have thereby become vested, may not be taken away by a change of the rules, he cannot be heard to complain if the rule is changed before any rights have accrued to him thereunder. [Citing numerous decisions.] . . . Plaintiff here was deprived of no vested right, but the effect of the law was simply to change the common-law rule of liability for accidental injuries, and to substitute a new system of compensation. That the Legislature may regulate or entirely abolish the common-law rules of liability, and the defenses of fellow-servants and contributory negligence and of assumption of risk; is thoroughly established, and no valid reason exists why it may not require compensation to be made to an employee for accidental injuries received in the course of his employment in hazardous occu-

pations, according to a different rule from that prescribed by the common law, and place the supervision of the new plan in the hands of an administrative commission instead of the courts."

Speaking to a like question, involving the constitutionality of a Workmen's Compensation Act enacted by the Legislature of the State of Texas, the Supreme Court of Texas said in Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, 560, 561; "The effect of the act upon the rights of employees cannot be properly weighed or determined without a due consideration of its aim and policy in their interest. Its theory, as it concerns them, is that the plan of compensation it provides for their injuries suffered in the course of their employment is more advantageous than a suit for damages. In the latter, the employee is compelled to assume the burden of establishing that his injury was caused by the employer's negligence, or the negligence of a servant for which the employer is responsible. His suit fails if it is subject to any of the common law defenses, that is, if his own negligence was the proximate cause of the injury, or if the injury was due to a risk he assumed, or the negligence of a fellow-servant. By the (Workmen's Compensation) Act a fixed compensation is payable to him upon the mere happening of an injury in the course of the employment, or to his beneficiaries in the event of his death from the injury, without reference to any negligence on the part of the employer or his servants, and without regard to defenses available to the employer at common law. With this as the evident spirit and design of the act in the employee's interest, his entering the service of an employer who in his business pursuit is governed by the act, or his remaining, after notice duly given, in the service of an employer who has adopted its plan of compensation and become subject to it, is made to operate as a waiver of any cause of action against the employer on account of any injury suffered in the course of the employment. . . . Does this deprive the employee of any vested right or property right? It is clear that it takes from him no property right. A *vested* right of action given by the principles of the common law is a property right, and is protected by the Constitution as is other property. The act, however, does not profess to deal with rights of action accruing before its passage. That which is withdrawn from the employee is merely his right of action against the employer, as determined by the rules of the common law, in the event of his future injury. This is nothing more or less than a denial to him by the Legislature of certain rules of the common law for the future determination of the employer's liability to him for personal injuries incurred in the latter's service, and, in the plan of compensation provided, the substitution by the Legislature of another law governing such liability and providing a different remedy. The question is: Was the Legislature without the power to thus completely change

510

the law upon the subject? This inquiry has no concern in the wisdom of the change; it takes no account of the reason for it; it is limited to the naked question of the Legislature's power. That the Legislature possessed the power must be conceded, unless it be true that the employee is protected by the Constitution in the continuance of the rules of the common law for his benefit in the determination of the employer's liability for such injuries as those with which the act deals. That no one has a vested right in the continuance of present laws in relation to a particular subject is a fundamental proposition; it is not open to challenge. The laws may be changed by the Legislature so long as they do not destroy or prevent an adequate enforcement of vested rights. There cannot be a vested right, or a property right, in a mere rule of law. . . . The Bill of Rights, Section 13, Article 1, of the (Texas) Constitution provides that 'every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law;' that is, the right of redress in the courts of the land in accordance with the law's administration. It is therefore not to be doubted that the Legislature is without the power to deny the citizen the right to resort to the courts for the redress of any *intentional* injury to his person by another. Such a cause of action may be said to be protected by the Constitution and could not be taken away; nor could the use of the courts for its enforcement be destroyed. This Act does not affect the right of redress for that class of wrongs. The injuries, or wrongs, with which it deals are *accidental* injuries or wrongs. What we know and denominate as the cause of action arising from an accidental injury is purely the creation of the common law. It is a common-law liability founded upon the common-law doctrine of *negligence;* and but for the rule of the common law— sometimes also expressed in statutes—there would be no liability for such an injury, and hence no cause of action for it. Therefore, in denying the employee of a subscribing employer, or his beneficiaries, any cause of action for accidental injuries, this act simply changes the common-law rule of liability upon the subject. It in effect declares that such employers shall no longer be liable as under that rule, but shall be liable according to the rule prescribed by the act. . . . We rest the decision of this question upon what seems to us is the evident proposition that no one has any vested or property interest in the rules of the common law, and therefore no one is deprived of a constitutional right by their change through legislative enactment. [Jensen v. Railway Co., 215 N. Y. 514, 109 N. E. 600.] . . . The right to have the liability of an employer for an *accidental* injury to an employee determined by a common-law doctrine is not a constitutional immunity, and this act, in changing that rule of liability, therefore invades no constitutional right.''

We conclude that the Workmen's Compensation Act of our State, herein under review, does not contravene Section 10, Article 2, of the Missouri Constitution; nor does the act invade or transgress any constitutional right guaranteed thereby.

Neither does the Compensation Act violate or contravene Section 28, Article 2, of our Constitution, which guarantees that "the right of trial by jury, as heretofore enjoyed, shall remain inviolate." This court has uniformly held that such provision of our Constitution means that the right of trial by jury as it existed at common law shall remain inviolate, and that the Constitutional provision has reference only to such right as it existed at the time of the adoption of our Constitution, and in the class of cases to which it was then applicable. [Bates v. Comstock Realty Co., 306 Mo. 312, 328; State ex rel. v. Holtcamp, 235 Mo. 232, 237; Eckrich v. Transit Co., 176 Mo. 621, 648; State ex inf. v. Shepherd, 177 Mo. 205, 242; State v. Bockstruck, 136 Mo. 335, 358; Berry v. Railroad Co., 223 Mo. 358, 366.] Workmen's compensation acts are of recent origin, and proceedings looking to awards of compensation, and for the ascertainment and determination of claims for *compensation* (as distinguished from *compensatory damages*), were wholly unknown at common law, and, of course, came into existence long since the adoption of our present Constitution in 1875. Learned counsel for the claimant and appellant herein refers in his briefs to the instant proceeding, which is clearly and unmistakably one under the Workmen's Compensation Act, as an *action at law*. More accurately and properly, we think, must it be denominated as a special and statutory proceeding, wherein a controversy between an employee (or, in case of the employee's death, between the dependents of the deceased employee), on the one side, and an employer, on the other side, respecting the statutory liability of the employer for payment of the compensation fixed by the Workmen's Compensation Act, is submitted to a statutory and administrative board of arbitration, known and designated by the act as the Workmen's Compensation Commission, whose findings of fact, by virtue of the provisions of the act, have the force and effect of the verdict of a jury. [State ex rel. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 900, 8 S. W. (2d) 897, 900.] While such proceeding is special and wholly statutory, and therefore is in a class by itself, it perhaps partakes more of the nature of an action in equity than it does of an action at law. It is well and thoroughly settled in this State and jurisdiction that actions or proceedings in equity are not triable by a jury, as a matter of constitutional right. [Wolf v. Insurance Co., 304 Mo. 459, 462; Ely v. Coontz, 167 Mo. 371, 376.]

However, the constitutionality of workmen's compensation acts has been upheld by the courts of the various states with practical

unanimity against the contention that they invade the constitutional right of trial by jury, although the juristic decisions have rested on varied reasoning. [Kiser on Workmen's Compensation Acts, sec. 19, and cases there cited.] Inasmuch as the constitutionality of such acts, against the claim or contention that they invade the constitutional right of trial by jury, has been maintained so generally and with such practical unanimity, we deem it unnecessary to review herein the numerous judicial decisions dealing with the contention, or to restate the grounds and the process of reasoning upon which such decisions are rested. Suffice it to say that a ground or reason frequently used by the courts in sustaining the constitutionality of the elective compensation acts (such as our own act) is that the operation of the act rests upon the free and voluntary consent of both employer and employee given in the manner provided in the act, and the act being contractual or quasi-contractual in operation and effect, the mutual election of employer and employee to accept the provisions of the act is tantamount to a waiver by both employer and employee of the right to a jury trial; hence, there is no deprivation of the constitutional right. [Shade v. Cement Co., 93 Kan. 257, 260, 144 Pac. 249; Hunter v. Coal Co., 175 Iowa, 245, 154 N. W. 1037, 1066; Greene v. Caldwell, 170 Ky. 571, 586; Deibeikis v. Link-Belt Co., 261 Ill. 454, 466; Mathison v. Street Railway Co., 26 Minn. 286, 297; Sexton v. Telegraph Co., 84 N. J. L. 85, 101.] In the Sexton case, supra, the New Jersey Supreme Court said: "The practice of waiving a trial by jury in civil cases or proceedings in this State is of such common occurrence as to attract no attention: and it has never been doubted in this State that such a waiver could be made. . . . No distinction can be perceived between a waiver of this right by the parties after commencement of a suit, and as incident to its prosecution, and a general waiver as a result of a contract made prior to the commencement of legal proceedings, or, indeed, to the accrual of a possible cause of action. Nor can any distinction be perceived between a waiver of the right in the form of an express contract between the parties and a waiver which may arise as a result of a legal presumption under legislative authority. . . . Either party to the contract of hiring may preserve his right to trial by jury by electing to stand upon the provisions of Section 1 of the act. If he chooses, on the contrary, to stand upon the provisions of Section 2 of the act by not giving notice or entering into an express stipulation in accordance with its terms, he has that option, and, by exercising it by implication waives his right to a trial by jury."

Some of the courts have held that the right to a trial by jury is guaranteed by the Constitution only as an incident to causes of action recognized by law, and when the cause of action cognizable at law is abrogated or removed by the Employer's Liability Act

(as is done by the Missouri act, if and when both employer and employee elect to accept the provisions of the act) the incidental right to a jury trial terminates with the abrogation or removal of the cause of action. [Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 217, 119 Pac. 554; State ex rel. v. Clausen, 65 Wash. 156, 210, 117 Pac. 1101.] In the Clausen case, supra, the Supreme Court of Washington, in upholding the constitutionality of the Workmen's Compensation Act of that State against the claim that the act deprives the employee of the constitutional right of a trial by jury, said: "The right of trial by jury accorded by the Constitution, as applicable to civil cases, is incident only to causes of action recognized by law. The act here in question takes away the cause of action, on the one hand, and the ground of defense, on the other; and merges both in a statutory indemnity, fixed and certain. If the power to do away with a cause of action in any case exists at all, in the exercise of the police power of the State, then the right of trial by jury is thereafter no longer involved in such cases. The right of jury trial being incidental to the right of action, to destroy the one is to leave the other nothing upon which to operate."

But regardless of the course of reasoning by which the various courts have reached the conclusion that the workmen's compensation acts are not violative of the constitutional right of trial by jury, our attention has been directed to no decision, and our own research has discovered none, wherein a compensation act, either compulsory or elective, has been held unconstitutional because of the denial of a trial by jury. Our own Compensation Act is patterned largely after the compensation acts of several of the States, and we find in our own act no transgression upon, or violation of, the constitutional guaranties accorded by Sections 10 and 28, of Article 2 of the Constitution of this State.

III. Appellant contends that Sections 41, 42, 43, 44 and 45 of the Workmen's Compensation Act (Laws 1927, pages 512, 513) are violative of Article 3 of the Missouri Constitution, which provides that "the powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted." The sections of the Compensation Act claimed to be violative of the aforesaid article of our Constitution relate to the procedure in controversies between an employer and an employee, or the dependents of a deceased employee, before the Workmen's

Compensation Commission, and the procedure in the circuit court upon appeal from a final award or order of the Compensation Commission.

Construing Article 3 of our State Constitution, this court said in State ex rel. v. Tolle, 71 Mo. 645, 648, 649: "It is not always easy to distinguish between the powers and duties which may and those which may not be assigned by the Legislature to the several departments among which the Constitution requires the distribution of the powers of government to be made. This difficulty has given rise to much litigation, and has induced the courts to adopt very liberal views in determining where any power not easily classified may be properly lodged. . . . Judge COOLEY, in his work on Constitutional Limitations, speaking of the division of the powers of government, says: 'It is difficult to point out the precise boundary which separates legislative from judicial duties. It is still more difficult to discriminate in particular cases between what is properly legislative and what is properly executive duty. The authority that makes the laws has large discretion in determining the means through which they shall be executed' (page 138, 4 Ed.)." The doctrine announced in the Tolle case, supra, was reaffirmed by this court in the later case of Rhodes v. Bell, 230 Mo. 138, 153, wherein it is said: "As said by COOLEY, J., *the authority that makes the laws has large discretion in determining the means through which they shall be exercised.*" (Italics our own.)

Kiser, in his treatise on the Workmen's Compensation Acts, section 22, says: "The creation by the compensation acts of boards or commissions having authority to pass on claims for injuries and to make awards does not constitute an unwarranted delegation of judicial powers, the decisions being based on the various grounds that such boards are administrative agencies, although exercising quasi-judicial powers, that they do not have the final authority to decide and to render enforceable judgments, or that under the elective statutes they are in effect boards of arbitration by agreement."

Compensation acts which, in all essential respects are similar to the act of our own State, have been held constitutional by the appellate courts of other states against the claim and contention that such acts provide for an unwarranted and improper delegation of judicial powers to the officer, board or commission created for the administration and execution of the act, and thereby contravene constitutional limitations upon the distribution of governmental powers. [Deibeikis v. Link-Belt Co., 261 Ill. 454, 466; Hunter v. Coal Co., 175 Iowa, 245, 154 N. W. 1037, 1060, 1061; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, 561; Mackin v. Axle Co., 187 Mich. 8, 18, 153 N. W. 49; State ex rel. v. District Court, 128 Minn. 221, 224, 150 N. W. 623; State v. Timber Co., 75 Wash. 581, 589, 135 Pac. 646; Borgnis v. Falk Co., 147 Wis. 327,

358, 133 N. W. 209.] In the Borgnis-Falk Company case, supra, the Supreme Court of Wisconsin said: "The next important contention is that the law is unconstitutional because it vests judicial power in a body which is not a court and is not composed of men elected by the people, in violation of those clauses of the State Constitution which vest the judicial power in certain courts and provide for the election of judges by the people, as well as in violation of the constitutional guaranties of due process of law. . . . We do not consider the Industrial Commission a court, nor do we construe the act as vesting in the Commission judicial powers within the meaning of the Constitution. It is an administrative body or arm of the government which in the course of its administration of a law is empowered to ascertain some questions of fact and apply the existing law thereto, and in so doing acts quasi-judicially, but it is not thereby vested with judicial power in the constitutional sense."

Our own court, en banc, in speaking of the powers conferred upon the Workmen's Compensation Commission by the Compensation Act of our State, has recently said, in State ex rel. v. Mo. Workmen's Compensation Commission, 320 Mo. 893, 898, 8 S. W. (2d) 897, 899: "It must be conceded that the Commission is not vested with judicial power in the sense in which that term is used in Article 3 of the Constitution, providing for the distribution of the powers of government. [Underwood v. McDuffee, 15 Mich. 361; Hunter v. Coal Co., 175 Iowa, 345, 307-318.]"

By the prevailing weight of judicial authority, our Workmen's Compensation Act does not contravene or violate Article 3 of the State Constitution, which provides for and limits the distribution of governmental powers.

IV. It is strenuously urged that Section 44, supra, of the act under review violates Sections 1, 22 and 23, Article 6, of the Missouri Constitution.

Section 1, Article 6, of the Constitution provides: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis (and, by amendment, the Kansas City and Springfield) Court(s) of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts."

Setion 22, Article 6, of the Constitution provides: "The circuit court shall have jurisdiction over all criminal cases not otherwise provided for by law; exclusive original jurisdiction in all civil cases not otherwise provided for; and such concurrent jurisdiction with and appellate jurisdiction from inferior tribunals and justices of the peace as is or may be provided by law."

Section 23, Article 6, of the Constitution provides: "The circuit court shall exercise a superintending control over criminal courts, probate courts, county courts, municipal corporation courts, justices

of the peace, and all inferior tribunals in each county in their respective circuits.''

The precise ground upon which the appellant assails the constitutionality of Section 44 of the Compensation Act is that it restricts the circuit court (upon an appeal from a final award of the Compensation Commission) to a review of the evidence adduced at the hearing had before the Compensation Commission; prevents the circuit court from hearing new and additional evidence; makes the findings of fact as made and recorded by the Compensation Commission conclusive and binding upon the circuit court; allows the circuit court to review only questions of law; and restrains the circuit court from modifying, reversing, remanding for rehearing, or setting aside the final award of the Compensation Commission, except upon one or more of the four grounds specified in said section of the Compensation Act, and upon no other ground. It is argued by appellant that, in the several respects mentioned, the Workmen's Compensation Act is an invasion by the legislative department of the state government upon the rights and powers of the judicial department, and that the act purports to unreasonably and unlawfully restrict and curtail the jurisdiction of the circuit court, as a constitutional court of original and appellate jurisdiction, and purports to deprive the circuit court of the powers and jurisdiction which the above-quoted sections of our Constitution expressly confer upon such court.

In support of the foregoing argument and contention, counsel for appellant cites State ex inf. v. Shepherd, 177 Mo. 205; Railway Co. v. Gildersleeve, 219 Mo. 170; Ex parte Creasy, 243 Mo. 679, and In re Ellison, 256 Mo. 378. In each of those cited cases an individual had been adjudged guilty and summarily punished for contempt of court, and in each case the question arose as to the scope and extent of the power of the Legislature, by statutory enactment, to limit or curtail the judiciary in respect to the punishment to be imposed upon contemnors adjudged guilty of contempts of court. In the Shepherd and Gildersleeve cases, a majority of this court held to the view that, inasmuch as the power of courts to punish for contempt is as ancient as the law itself, and has existed from the earliest dawn of civilization, and inasmuch as such power, in its essence, is inherent, and ingrained in every court of common-law powers, and so becomes a part of its very being, the legislative department of the state government has no power, right or authority to take away, abridge, impair, limit, or regulate in any manner or respect, the inherent power of courts of record to punish for contempts committed against the court. The broad announcement made by a majority of our court in the Shepherd and Gildersleeve cases was partially overruled by this court in the Creasy case, it being held in the Creasy case, and followed in the later Ellison case, that while a constitutional court of common-law powers may not be wholly shorn, by a legislative

enactment, of the inherent right and power to punish for contempt, nevertheless the Legislature may, by statutory enactment, reasonably regulate such judicial right and power, where not expressly confirmed by the Constitution of the State, which reasonable regulation by the Legislature is in no wise hostile to the inherent power of courts of record to punish for contempts.

Counsel for appellant also cites, as supporting his contention, In re Hagan, 295 Mo. 435; Dorrance v. Dorrance, 257 Mo. 325, and State ex rel. v. Atkinson, 271 Mo. 28. The Hagan case was an original proceeding commenced in this court under our writ of habeas corpus. It was contended by the respondents to our writ issued therein that this court was without jurisdiction of the subject-matter because of a legislative and statutory enactment which undertook to restrict the original jurisdiction of this court over writs of habeas corpus, and to vest such original jurisdiction in the circuit courts. Our court held that, by virtue of Section 3, Article 6, of the Constitution, which confers upon the Supreme Court a general superintending control over all inferior courts of the State, and which expressly gives the Supreme Court the power "to issue writs of *habeas corpus,* . . . and to hear and determine the same," the Legislature was without power to limit, by statutory enactment, our original jurisdiction as thus prescribed by the Constitutional grant. We therein said: "When the Constitution grants to this court an unrestricted right to grant writs of habeas corpus (as it does), no Legislature has the right or power to diminish this constitutional power. The Constitution (Sec. 3, Art. 6) grants to this court, as a part of its original jurisdiction, the right to 'issue writs of habeas corpus,' and no legislative act can curtail or restrict that power. The power to issue includes the power to hear and finally determine, irrespective of legislative interference." The doctrine announced in the Hagan case is sound and not to be questioned, but it is obvious and plain that our ruling in that case is predicated upon a clear, positive, and express constitutional grant of unrestricted judicial power.

The Dorrance case was an action in equity to set aside a decree of divorce upon the equitable ground that fraud had been committed upon the court in the procurement of the divorce decree. The defendant in that cause placed reliance upon a legislative enactment forbidding a petition for the review of a judgment for divorce, and we held that, the power of the courts to grant equitable relief against frauds being firmly interwoven in our system of jurisprudence, and our Constitution having expressly conferred equitable powers upon the courts of this State and having vested the circuit courts with original jurisdiction in all civil cases, whether at law or in equity, the Legislature, by statutory enactment, cannot withdraw or unreasonably restrict such powers without violating the organic law.

In the Atkinson case we had under review a section of the Public Service Commission Act of this State (Laws 1913, p. 635, sec. 101), which provides that "the findings of the commission so made and filed, when properly certified under the seal of the commission, shall be admissible in evidence in *any action, proceeding* or hearing before the commission *or any court . . . , whether arising under the provisions of this act or otherwise,* and such findings when so introduced shall be *conclusive evidence of the facts therein stated* as of the date therein stated under conditions then existing." Speaking to the subject of the statutory provision under review, we said: "If that part of this Section 101 first quoted be given its literal meaning, dissociated from other parts of the section, as claimed for it and feared by appellant, the findings of the commission would be '*conclusive evidence of the facts therein stated*' regarding valuation, in *any* proceeding, 'before the commission or any court,' between the commission and many parties mentioned (in the section) *not parties to this proceeding.* In that case it would be clearly unconstitutional. The Legislature may establish rules of evidence and may provide that proof of a certain character shall be prima-facie evidence of a fact sought to be established, but it is clearly beyond the power of a Legislature to prescribe what shall shall be *conclusive* evidence of any fact." However, it is apparent that we were dealing, in the Atkinson. case, with a widely different legislative requirement than that contained in Section 44 of the Workmen's Compensation Act now under review. The requirement of the Compensation Act, prescribed by Section 44 thereof, is that "*upon appeal* no additional evidence shall be heard and, in the absence of fraud, the *findings of fact* made by the commission . . . shall be *conclusive and binding.*" The legislative enactment under review in the Atkinson case undertook to prescribe a *rule of evidence,* which rule of evidence was made to apply to *any* action or proceeding, whether arising under the provisions of the act *or otherwise;* whereas, the legislative act presently under review merely undertakes to prescribe a *rule of practice or procedure* which is made to apply only upon an appeal from a final award of the Compensation Commission to the circuit court, that is to say, in the single proceeding wherein the parties to such proceeding are the same in the circuit court as before the Compensation Commission.

One other decision cited by appellant should be mentioned— Cudahy Packing Co. v. Railway Co., 287 Mo. 452. That case originated in a justice of the peace court, and was appealed to the circuit court. It was said by this court in that case: "The purpose of an appeal from a justice of the peace in this State is to secure a 'trial anew.' That is the sole purpose for which such appeal is permitted by the statute. [Sec. 2902, R. S. 1919.] When a defendant appeals he therefore appeals for that purpose and no other." But the

language of that opinion (just quoted) must be viewed in the light of the particular statute in respect to which the language was used and applied. The particular statute referred to in the opinion dealt with the subject of appeals from justices' courts and proceedings thereon, and specifically provided that the circuit court shall be possessed of the cause on appeal, and "shall proceed to hear, try and determine the same anew." In other words, the statute discussed in the Cudahy Packing Company case provided in express and certain terms for a trial *de novo* in the circuit court of every cause taken by appeal from a justice of the peace court.

In determining the constitutional questions herein raised and presented by the appellant, it must be borne in mind that the right to an appeal is, and always has been, purely statutory, and was unknown to the common law. [Dorris Motor Car Co. v. Colburn, 307 Mo. 137, 157; Arcadia Timber Co. v. Evans, 304 Mo. 674, 676; Bonfils v. Martin's Food Service Co., 299 Mo. 500, 506; Millar v. Transit Co., 216 Mo. 99, 103.] "It is a remedy which the Legislature may in its discretion grant or take away, and it may prescribe in what cases, and under what circumstances, and from what courts, appeals may be taken; and, unless the statute expressly or by plain implication provides for an appeal from a judgment of a court of inferior jurisdiction, none can be taken. . . . The legislatures of the several states of the Union have the same extensive power as the British parliament, except so far as they are limited by constitutional provisions, and therefore they have authority in the absence of any such limitation to abridge or extend the right at discretion." [2 R. C. L. 27, 28.] Hence, it follows that, since the right of appeal is purely statutory and wholly remedial, the Legislature, in its discretion, may prescribe what particular errors or matters, whether of fact or of law, are reviewable by an intermediate, or by a superior, court upon an appeal allowable and taken thereto from an inferior court or tribunal. Thus, it is said in 3 Corpus Juris, 320: "But, of course, the statute may deny the right of appeal to review particular errors of law. . . . Whether errors of fact are reviewable upon appeal depends for its solution upon the terms of the statute granting the right, and upon how closely the remedy has been assimilated to the appeal in equity." And on page 318 of the same text, it is said: "What errors are reviewable on appeal, the proceedings in which an appeal will lie, and the conditions upon which the right may be exercised, depend entirely upon a construction of the constitutional or statutory provisions by which the right is granted."

In 3 Corpus Juris, 297-299, it is said: "While the law has usually considered it an essential right of a suitor to have his rights examined in tribunals superior to those in which he considers himself aggrieved, the right pertains to the remedy, and, in the absence of con-

stitutional inhibition, it is within the power of the Legislature to prescribe the cases in which, and the courts to which, parties shall be entitled to bring a cause for review; and to impose such conditions and restrictions as it may see fit. Where, however, the right to appellate review is given or secured by the constitution, it cannot be taken away or impaired by the legislature; nor can the legislature confer appellate jurisdiction in conflict with constitutional provisions. It has been held that even in the absence of legislative provision the establishment by the constitution of an appellate court is an implied declaration that some right of appeal exists which cannot be unreasonably restricted by statute law. But a constitutional provision that certain courts shall have appellate jurisdiction in such cases arising in inferior courts, in their respective counties, *as may be prescribed by law* limits the exercise of their jurisdiction to the extent and mode which the legislature may prescribe." (Italics ours.)

Our own court has aptly said, in Schuepbach v. Gas Light Co., 232 Mo. 603, 611: "In reversing judgments and remanding cases for another trial a court of errors moves strictly in a statutory orbit. As an appeal is a mere creature of the statute, the disposition of an appeal in an upper court is subject to statutory regulation. What the statute grants, it may regulate, modify or take away."

While Article 6 of our Constitution vests the judicial power of the State, as to matters of law and equity, in certain named constitutional courts, superior, intermediate, and inferior, and while said article of the Constitution confers upon the circuit court "exclusive original jurisdiction in all civil cases *not otherwise provided for,* and such concurrent jurisdiction with and appellate jurisdiction from *inferior tribunals* and justices of the peace *as is or may be provided by law,*" and gives the circuit court a superintending control over *"all inferior tribunals* in each county in their respective circuits," and assuming (without so holding or deciding) that the Workmen's Compensation Commission is an "inferior tribunal" within the meaning, intent and purpose of the Constitution (as is insisted by the appellant herein), nevertheless, we find in the Constitution no express, positive, or clear inhibition or restriction upon the legislative branch of our state government which in any wise limits or curtails the power and authority of the Legislature to prescribe the particular causes and proceedings in which an appeal may lie, or to impose such reasonable conditions and restrictions upon an appeal as it may see fit, or to provide what errors or matters, whether of fact or of law, are reviewable on appeal. It follows therefrom, we think, that the Legislature of our State, being unlimited and unrestrained by any constitutional inhibition, had the right, power, and authority to provide and prescribe (as it did), in Section 44 of the Compensation Act, that, upon an appeal to the circuit court from any final award or order of the Workmen's Compensation Com-

mission, "no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding," and that "the (circuit) court, on appeal, shall review only questions of law."

It is suggested by counsel for appellant, in his reply brief filed herein, that Section 44 of the Compensation Act is hopelessly contradictory, in that while such section prohibits the circuit court, on appeal, from hearing any additional evidence, and limits the review of the circuit court only to questions of law, nevertheless the section allows the circuit court, on appeal, to modify, reverse, remand for rehearing, or set aside the final award or order of the Compensation Commission upon the ground that "the award was procured by fraud." Counsel for appellant says in his reply brief: "The plain English of this is, as we see it, that unless fraud in some way appears upon the documents, papers and transcript furnished by the Commission, the findings are conclusive and binding, and must be affirmed by the circuit court, for the court is prohibited from hearing any additional evidence, even if it would disclose the fraud by the express terms of the section." Inasmuch as it is not contended by the appellant, either in the circuit court or in this court, that the order or award of the Compensation Commission (from which an appeal was taken herein) was procured by fraud, we do not deem it necessary, at this time and in this opinion, to discuss or define the power and authority of the circuit court (on an appeal from a final order or award of the Compensation Commission) to hear evidence bearing upon the question of fraud in the procurement of the order or award. We leave such question and matter for determination at a time and in a proceeding arising under the Compensation Act wherein fraud in the procurement of the order or award of the Compensation Commission is raised and contended, and is a live question for decision. Fraud in the procurement of the award or order of the Compensation Commission is not a live question in the instant proceeding. In this connection, however, it may not be amiss to refer to the decision of the Supreme Court of Wisconsin, in International Harvester Co. v. Industrial Commission of Wisconsin, 157 Wis. 167, 172, et seq., involving the construction and application of the Workmen's Compensation Act of that state, which in all essential respects, bears very close similarity to the Compensation Act of our own State. Said the Wisconsin Supreme Court in that decision: "This statute, while providing for a review by the courts of the award of the Industrial Commission, unlike the Railroad Commission Law, does not permit a trial de novo in the circuit court. That court may set the award aside on three grounds only: (1) That the Commission acted in excess of its powers; (2) that the award was procured by fraud; and (3) that the findings of fact do not support the award. [Sec. 2394-19,

Stats. 1911.] Where an award is attacked as having been procured by fraud, it is probable that the statute contemplates that evidence may be taken on this issue in the circuit court. Whether this be correct or not, it is certain that this is the only ground on which the circuit court can consider any facts not found in the record as returned. Both parties must offer any testimony they wish to adduce before the Commission, except on the issue of fraud. If they fail to do so, they are precluded from offering it at all. . . . This same section (2394-19) provides that the *findings of fact made by the Commission within its powers* shall in the absence of fraud be *conclusive*. This leads to the query: Is it within the power of the Commission as set forth in the law to make a finding of fact not supported by any evidence whatever? This feature of the law was attacked in the original suit brought to test its constitutionality and was considered by the court, and it was there decided that if the Commission acted outside of its powers its decision was open for review to the extent that decisions of various other bodies are reviewable on certiorari. [Borgnis v. Falk Co., 147 Wis. 327, 358-360, 133 N. W. 209.] The statute contemplates and provides for a full and fair hearing and that the decision of the Commission shall be based on evidence and not arbitrarily made. It would seem to be clearly outside of its powers to find essential facts that had no support in the evidence. This is one of the grounds specified in Sec. 2394-19 on which the courts may review the award made by the Commission. In a number of cases following the decision in Borgnis v. Falk Co., supra, the interpretation there given to the law has been followed. [Northwestern I. Co. v. Industrial Comm., 154 Wis. 97, 103, 142 N. W. 271; Nekoosa-Edwards P. Co. v. Industrial Comm., 154 Wis. 105, 108, 141 N. W. 1013; Milwaukee v. Miller, 154 Wis. 652, 144 N. W. 188.] The rule in *certiorari* cases is that, if ·in any reasonable view of the evidence it will support the conclusion arrived at, such conclusion will not be disturbed for want of support in the evidence. If, however, the finding has no support in the testimony, there was no jurisdiction to make it. [Citing cases.] From what has been said it is obvious that there must be some support in the evidence for findings of fact made by the Industrial Commission, and that such evidence must be made a part of the record that is returned to the circuit court for review.''

Such has been the uniform construction and interpretation of our own Compensation Act by the appellate courts of this State with respect to the review by the circuit court, on appeal, of the findings of fact made by the Workmen's Compensation Commission. [Brocco v. Stores Co. (Mo. App.), 22 S. W. (2d) 832, 833; Brashear v. Milling Co. (Mo. App.), 21 S. W. (2d) 191, 192; Kinder v. Wheel & Foundry Co. (Mo. App.), 18 S. W. (2d) 91, 92; Hager v. Publishing Co., 17 S. W. (2d) 578; Smith v. Mercantile Co. (Mo. App.),

14 S. W. (2d) 470, 472; Cotter v. Coal Co. (Mo. App.), 14 S. W. (2d) 660, 662.]

In Kiser on Workmen's Compensation Acts, Section 127, the prevailing rule respecting the scope and extent of the powers of an intermediate, or of an appellate, court to review the findings of fact made by a commission or board in a compensation proceeding is thus clearly stated: ''In the absence of an express provision for a retrial of issues of fact, the courts will not on review redetermine the facts found by the commission or board; hence its finding will be sustained if there is any competent evidence to support it, and its determination on conflicting evidence is final and conclusive, although the court might have come to a different conclusion thereon had it been called on to decide the question in the first instance. So the findings are conclusive if there is any substantial basis for them in the evidence, or, as the rule is sometimes stated, if in any reasonable view of the evidence it will support them either directly or by fair inference. In this respect an analogy is maintained to a finding of fact by a court or a jury in an action at law. The evidence may be considered for the purpose of supplementing or explaining the findings of fact, but not to contradict or vary them. The question of whether there is an entire absence of evidence to sustain the findings of the board or commission is, however, one of law which will be considered.''

To like effect is the statement of the prevailing rule as made by Mr. William R. Schneider, of the St. Louis Bar, in his recent text on the law of Workmen's Compensation, volume 2, section 561, pages 1568, et seq.

The Workmen's Compensation Acts of many of our sister States have been consistently upheld against the assault and contention that such acts are unconstitutional because limiting the powers of review of the judiciary upon appeal from the final award or order of an officer, board or commission charged with the administration of such compensation acts. [Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803, 805; Vester Gas Range and Mfg. Co. v. Leonard (Tenn.), 257 S. W. 395, 397; Mackin v. Axle Co., 187 Mich. 8, 18, 153 N. W. 49; American Life Ins. Co. v. Balmer, 238 Mich. 580, 214 S. W. 208; Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 694, 704; Borgnis v. Falk Co., 147 Wis. 327, 358-361.]

Workmen's compensation acts similar to that of our own State likewise have been consistently upheld by the Federal Supreme Court against the contention that such acts are violative of the ''due process of law'' requirement prescribed by the 14th Amendment to the Federal Constitution. [Hawkins v. Bleakly, 243 U. S. 210, 215, 216; Booth Fisheries Co. v. Industrial Commission of Wisconsin, 271 U. S. 208-211.] In the Booth Fisheries Co. case, Mr. Chief Justice TAFT, delivering the opinion of the court, said: ''The only

question raised on the appeal to the Supreme Court of Wisconsin was the constitutionality under the Fourteenth Amendment of the Workmen's Compensation Act of Wisconsin in its limitation of the judicial review of the findings of fact of the Industrial Commission to cases in which 'the findings of fact by the Commission do not support the order or award.' [Wisconsin Statutes 1921, sec. 2394-19.] This limitation has been held by the state Supreme Court to mean that the findings of fact made by the Industrial Commission are conclusive, if there is any evidence to support them. [Citing cases.] It follows that the court may not in its review weigh the evidence or set aside the finding on the ground that it is against the preponderance of the testimony. It is argued that the employer in a suit for compensation under the act is entitled under the Fourteenth Amendment to his day in court, and that he does not secure it unless he may submit to a court the question of the preponderance of the evidence on the issues raised. A complete answer to this claim is found in the elective or voluntary character of the Wisconsin Compensation Act. . . . It is conceded by the counsel for the plaintiffs in error that the act is elective, and that it is so is shown by the decisions of the Wisconsin court in Borgnis v. Falk Company, 147 Wis. 327, 350, and in the present case. [185 Wis. 127.] If the employer elects not to accept the provisions of the Compensation Act, he is not bound to respond in a proceeding before the Industrial Commission under the act, but may await a suit for damages for injuries or wrongful death by the person claiming recovery therefor, and make his defense at law before a court in which the issues of fact and law are to be tried by jury. In view of such an opportunity for choice, the employer who elects to accept the law *may not complain that* in the plan for assessing the employee's compensation for injury sustained, *there is no particular form of judicial review*. This is clearly settled by the decision of this court in Hawkins v. Bleakly, 243 U. S. 210, 216. More than this, the employer in this case having elected to accept the provisions of the law, and such benefits and immunities as it gives, may not escape its burdens by asserting that it is unconstitutional. The election is a waiver and estops such complaint. [Daniels v. Tearney, 102 U. S. 415; Grand Rapids & I. R. Co. v. Osborn, 193 U. S. 17.] . . . Here the employer was given an election to defend against a full court proceeding but accepted the alternative of the Compensation Act.'' (Italics ours.)

For the reason that the constitutionality of the Workmen's Compensation Act of this State is assailed for the first time in the present proceeding, and therefore is a matter of original impression in this court, we have given a most careful and exhaustive study and consideration to the several constitutional questions raised and presented by the appellant herein. Our study and consideration of such

questions, aided largely by the decisions of the courts of last resort of other and foreign jurisdictions dealing with like constitutional questions which have been urged against workmen's compensation acts of other States bearing close similarity to the act of our own State, leads us to the conclusion that the act under review is not in contravention of those provisions of the organic law of this State claimed by appellant herein to have been violated by certain sections of the act.

V. Respecting the merits of the instant proceeding, there is no reviewable error of the circuit court presented by the abstract of the record filed by the appellant herein. The appellant's abstract of the record does not set forth or contain any of the evidence adduced and taken before the Workmen's Compensation Commission. In fact, the abstract of the record discloses that counsel for the claimant and appellant declined, upon the hearing in the circuit court, to rely upon the evidence taken before the Workmen's Compensation Commission and incorporated in the transcript filed by the Commission in the circuit court, counsel for the claimant-appellant being content merely to demand a trial *de novo* in the circuit court. However, the transcript of the evidence taken before the Compensation Commission was on file in the circuit court, and the judgment of the circuit court, affirming the final award or order of the Workmen's Compensation Commission, recites upon its face that the circuit court saw and "duly considered the transcript of testimony had before the Workmen's Compensation Commission of the State of Missouri, together with all the records and proceedings in the cause." In the absence here of the evidence had and taken before the Workmen's Compensation Commission, this court, upon an appeal from the judgment of the circuit court, must presume right action upon the part of the circuit court, and that the transcript of the evidence taken before the Compensation Commission, and filed by the Commission in the circuit court, disclosed that there was sufficient competent and substantial evidence to warrant the making of the award, and that the facts found by the Compensation Commission support the award.

It follows that the judgment of the circuit court must be affirmed, and it is so ordered. *Ellison* and *Ferguson, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.