J. A. SPENCER, Respondent, v. R. E. BRUNER, Appellant.

Kansas City Court of Appeals, June 24, 1907.

1. MASTER AND SERVANT: Place of Work: Care. The master is bound only to exercise ordinary care to provide a reasonably safe place for the servant to work and is not bound to adopt the best, safest or most approved method, but one that commends itself for its reasonable care.

2. ——: ——: ——: Custom: Evidence. The method of doing a thing becomes a custom through its adoption by many prudent men who have found it to be a reasonably safe method, and the law in arriving at the nature or tendency of a given act considers its effect upon the conduct of others as shown by general custom; and expert evidence as to the general custom is admissible to show the negligent or careful tendency of the given act.

3. ——: ——: ——: Instruction. Instruction considered and held harmless error, since it was not prejudicial.

4. DAMAGES: Personal Injury: Loss of Earnings: Evidence. Held, Evidence was sufficient to support an instruction relating to damages for loss of earning capacity, since the fact that the disability is not total, nevertheless its effect upon the capacity to labor in the future was a question for the jury.

5. MASTER AND SERVANT: Inexperienced Servant: Information as to Danger: Evidence: Instruction. Held, plaintiff's action is founded not only on negligence in failing to furnish a reasonably safe place, but also in failing to inform an inexperienced servant of the extent of the risk he was directed to encounter. And the evidence was sufficient to send both issues to the jury.

Appeal from Jasper Circuit Court.—*Hon. John W. Halliburton*, Special Judge.

AFFIRMED.

*A. E. Spencer* for appellant.

(1) Instead of showing the condition, and the usual and ordinary method of handling such situations in the mines of the district, the witness was permitted

to tell what he would have done, and to say that the way, in his opinion, to mine is to timber and put up stringpoles and wood over it, and keep everything from dropping on the men. And then he adds, over defendant's objection, that his methed would make the drift safe for men to work under. All this was error, and of the most prejudicial character. (2) The defendant was only bound to exercise ordinary care to provide plaintiff a reasonably safe place in which to work. Wojtylak v. Coal Co., 188 Mo. 260. He was, of course, not bound to adopt the best, or safest or most approved method. Smith v. Railway, 69 Mo. 32. He had performed his duty when he adopted the method in general use. Beckman v. Association, 98 Mo. App. 555. Hence the question is not, could the ground have been timbered and supported, or, how would the witness Niverson have handled and supported it, and evidence of such character is error. Mason v. Mining Co., 82 Mo. App. 367; Berning v. Medart, 56 Mo. App. 443; Bohn v. Railway, 106 Mo. 429. (3) The court erred in giving instruction numbered 3 for plaintiff. By this instruction the jury were told to consider and award damages for plain-. tiff's loss of earning capacity, which he "will necessarily sustain in the future." The evidence tends to show that some of the effects of the injury may be permanent, but entirely fails to show a decreased earning capacity in the future. (4) The court erred in giving instruction numbered 1, for plaintiff. 1 Labatt, Master and Servant, p. 1260, sec. 466; Helfenstein v. Medart, 136 Mo. 613; Duerst v. Company, 163 Mo. 621.

*Perkins & Blair* for respondent.

(1) Under the state of the record the point made by appellant that he was prejudiced by the admission of the evidence of Niverson, to which he objected is not well taken and is purely technical. Monohan v. Coal Co., 58 Mo. App. 74; Bruce v. Bombeck, 79 Mo. App.

237; Grocery Co. v. Smith, 74 Mo. App. 424. (2) Instruction numbered 3 given for plaintiff correctly declared the law.

JOHNSON, J.—Action of a servant against his master to recover damages for personal injuries alleged to have been caused by the master's negligence. Judgment was for plaintiff in the sum of two thousand three hundred and seventy-five dollars, and the cause is before us on the appeal of defendant.

At the time of the injury, Monday, May 24, 1903, defendant was operating a lead and zinc mine, and plaintiff was employed therein as a shoveler. From the wall of a long drift which was about twenty feet wide and twenty-five or thirty feet in its perpendicular dimension, defendant had begun to cut a smaller drift, the roof of which was sixteen or eighteen feet above the floor of the main drift. On Saturday preceding the injury, blasting had been done in the new drift which had detached a volume of material for shovelers to remove and had so shaken the roof that it was necessary to guard the laborers employed on the floor against injury from the falling of material which remained attached to the roof, but which was so loosened that it was likely to fall. The method adopted by defendant to remove this danger was to "trim" the roof, which means that workmen were to remove the loosened material with pick and spoon. Plaintiff was one of the men ordered by the foreman to do this work. He objected on account of his inexperience, but was told by the foreman that it could be done in safety, if he would clear the roof ahead of him and not stand, while working, under an uncleared place. Thus assured, plaintiff began work at the entrance to the small drift and, owing to the height of the ceiling, at first, was compelled to use a ladder, but as the drift penetrated the wall a short distance (about fourteen feet) and the roof and floor rapidly converged,

plaintiff, at a distance of, perhaps eight feet from the en-
trance, could reach the loosened materials with his im-
plements while standing on the floor. While at work on
the ladder, he discovered a crack in the roof which ap-
peared to him as an indication of a dangerous condition.
He immediately notified the foreman of its presence,
and the latter ascended the ladder and inspected the
place, after which he directed plaintiff to go on with
the work, assuring him that there was no present danger
to be anticipated from trimming over that place and
that it would "take a shot" to bring down the slab of
material which the crack showed had been somewhat
loosened. He further ordered plaintiff and his colabor-
ers to "put a shot" into that place that evening just be-
fore they quit work for the day. Ignorant of the fact
that he was threatened by imminent danger and relying
on the superior knowledge of the foreman, plaintiff
obeyed the order, trimmed over the area in which the
crack appeared and beyond it, to a place where he could
work from the stope without using a ladder. While
thus engaged, a large slab fell from the place where
plaintiff feared it would fall, and he was injured by be-
ing struck by some of the falling material. It appears that
the roof of the small drift was in what miners term "soft
ground." It was composed of soapstone and selvage,
or decomposed rock. When exposed to the air, soapstone
rapidly hardens and becomes very brittle and, during
the process of this change, is likely to crack and slough
off. Witnesses for plaintiff say that the usual method
followed in instances of the character described is to
support the roof by timbers, while those for defendant
state that it is not usual to install such artificial sup-
ports until after the roof has been trimmed and that,
in the present case, owing to the condition of the stope
and to the necessity for further blasting in extending
the drift, timbers would have been displaced by explos-
ions and, therefore, it was impractical to use them.

126 App—7

It is denied by the witnesses for defendant that a crack existed in the roof, that the foreman was notified by plaintiff of the existence of such defect, or that he gave plaintiff the assurance of safety in the place, on which the latter claims to have relied. It is the theory of defendant that plaintiff failed to heed the admonition to work ahead of him, but incautiously stood under material which he pulled down on himself. The foreman admits he knew plaintiff was inexperienced in the work of trimming, but insists that he would have escaped injury had he followed the directions given him.

The issues of fact presented by the pleadings and submitted to the jury are thus defined in the first instruction given at the request of plaintiff: "If you find and believe from the evidence in this case that on the — day of May, 1903, the defendant, R. E. Bruner with other persons was engaged in mining for lead and zinc in Jasper county, Missouri, under the name of the B. & H. Mining Company and that on said day the plaintiff was employed by said company to work in its said mine, then it was defendant's duty to use ordinary care to furnish plaintiff a reasonably safe place to work in said mine, having due regard to the kind, character and nature of the business in which they were engaged and the work which the plaintiff was employed to perform; and if you further find from the evidence that on said — day of May, 1903, the defendant, R. E. Bruner, and such other persons as were associated with him in the operaton of said mine, had carelessly and negligently permitted the roof of one of the drifts in said mine to become dangerous and an unsafe place in which to work, and if you further believe from the evidence that plaintiff was employed by defendants to work in the capacity of shoveler and that his duties under his employment were to shovel dirt and that defendant's ground boss ordered and directed plaintiff to go to work on the roof of said drift and assist in trimming the roof thereof

and that plaintiff notified said ground boss that he had had no experience in such work, and that defendant's said ground boss thereupon instructed plaintiff to go ahead and assist in the trimming of said roof, and that acting under such instructions plaintiff did so, and while engaged in said work plaintiff discovered what he believed to be an unsafe condition of the roof of said drift and notified said ground boss that he thought it was unsafe to continue said work, and if you further find and believe from the evidence that the danger from working at said place in said drift was not so obvious and glaring that a person of ordinary prudence would have refused to continue working therein, and that after plaintiff notified said ground boss, if you believe he did so, said ground boss made an examination of the roof of said drift and directed plaintiff to proceed with said work and stated that the roof was all right, it would take a shot to bring it down, and that plaintiff, relying upon the superior knowledge of the said ground boss, resumed said work, and while engaged therein and while in the exercise of ordinary care and caution on his part, by reason of the carelessness and negligence of defendant in permitting the roof of said drift to become dangerous and an unsafe place under which to work, a large amount of dirt and rock fell from the roof of said drift upon the plaintff and injured him, as charged in the petition, then you will find the issues for the plaintiff."

At the conclusion of the evidence, defendant offered an instruction in the nature of a demurrer to the evidence, but the court properly refused to give it, and as this ruling is not now made a subject of complaint, we will not discuss the propriety of sending the case to the jury, but will dispose of the errors assigned in the order of their presentation.

The first question relates to the admission of evidence offered by plaintiff over the objection of defend-

ant.  One of plaintiff's witnesses, who was shown to be a miner of long experience, testified as follows:

"Q.  The question is, what effect air has on the roof, a roof like this little drift has?  A.  It makes it hard.

"Q. What does it make it do?  A.  Makes it crumble off.

"Q.  In order to prevent that, how would you do it? A.  Timber it.

"Counsel for defendant:  I object, and move the answer be stricken out, as incompetent, irrelevant and immaterial, calling for a conclusion of the witness.

"The Court:  Probably you had better put your question in a little broader shape so as not to —

"Q.  Mr. Niverson, in order to protect the roof of this little drift and keep it from crumbling and falling, what was necessary to do in the way of timberng, if anything?

"Counsel for defendant:  I object for the same reason; also because leading and suggestive.

"The Court:  I think you ought to strike out "timbering," etc.

"Counsel for defendant: I object to it for the reasons already stated; improperly calls for an expression of the opinion or conclusion of the witness and incompetent and irrelevant.

"The Court:  I will overrule that objection.  I think he can state what is proper to be done.

"Q.  I will put in another question.

"Counsel for defendant:  I except.

"Q.  In order to protect the mine and make it safe for men to work in, what would be necessary to do to prevent the roof of that little drift from dropping and slacking when the air came in contact with the soapstone?

"Counsel for defendant:  The same objection.

"The Court: Overruled. You can answer that question.

"Counsel for defendant: We except.

"A. The way to mine that is to timber it up, then it wouldn't air slack and in driving it ahead put your string poles and wood up over it and keep everything from dropping on the men.

"Counsel for defendant: Same objection.

"The Court: Same ruling.

"Counsel for defendant: We except.

"Q. What do you do? A. To do that timbering, put up your poles and put the cap on it.

"Q. What was the proper way to do it in that drift?

"Counsel for defendant: Same objection.

"The Court: Same ruling.

"A. That would be the proper way to do, put up two sets of timbers and wood up and key up to the roof, run your stringer poles and cut out for another set of timbers and put up and timber up to your stringer poles, and make it safe that way and the only way it could be made safe.

"Counsel for defendant: I move that be stricken out.

"The Court: The last part of the answer will be stricken out. I don't think he ought to volunteer.

"Q. State whether or not that would make the drift safe for the men to work under.

"Counsel for defendant: Same objection.

"Q. Certainly it would.

"The Court: Same ruling. That wasn't the part I was striking out. It was 'the only way it could be made safe.'

"Counsel for plaintiff: I don't care anything about that.

"Counsel for defendant: We except."

We give sanction to the argument that defendant

was bound only to exercise ordinary care to provide plaintiff a reasonably safe place in which to work, and was not bound to adopt the best, safest or most approved method, but in the proper discharge of its duty to plaintiff, it devolved on defendant to adopt a method for doing the work that would commend itself to reasonable care. The right of the master to conduct his business in his own way does not include a license to be negligent and where, in the performance of his duty to exercise reasonable care to furnish his servants a reasonably safe place in which to work, he adopts a method of work not usually employed by ordinarily careful and prudent masters under like circumstances and which is less safe than the usual method, the classification of such departure from the beaten path necessarily becomes a question of fact for the jury to determine. As we observed in Brunke v. Telephone Co., 115 Mo. App. l. c. 39: "A method of doing a thing becomes a custom through its adoption by many prudent men, who, in selecting it as a rule of conduct have necessarily found it to be a reasonably safe method. Their uniform conclusion, as exhibited by their actions, is not only persuasive evidence that their method is reasonably careful but also that one not recognized by usage and less safe is not reasonably careful. That is to say, the law recognizes the fact in arriving at the nature or tendency of a given act, of considering its effect upon the conduct of others as shown by general custom."

In order to support his contention that defendant did not exercise reasonable care, it was proper for plaintiff to show by expert testimony the usual method followed in such cases and that defendant rejected such method for one less safe. Reasonably construed, the testimony under consideration deals with these facts within the scope of the principles announced and does not attempt to convert the individual opinion of the witness into a standard by which the conduct of defend-

Spencer v. Bruner.

ant should be measured. We understand the witness to say, in effect, that the only method usually followed in such cases by ordinarily careful and prudent miners was that of timbering the drift and that any other would be less safe. Such testimony is unobjectionable.

In asking what was necessary to be done "in order to protect the mine and make it safe for men to work in," counsel for plaintiff inaccurately referred to the duty of a master to his servant which does not impose on him the task of providing a safe place, but only that of employing reasonable care to provide one reasonably safe, but in the light of the context and of the instructions which properly defined the rule, we cannot conceive that the jury could have been misled. It is apparent that neither court nor counsel entertained a remote thought of enlarging the scope of the master's duty beyond that fixed by the substantive law. It would be a strained conclusion, indeed, should we say that the jury might have been led by this question into the erroneous belief that defendant was burdened with the absolute duty of providing the servant a safe place in which to work. Error, to constitute a ground of reversal, must be prejudicial, and prejudice will not be presmed where it clearly appears from the whole record that no one of average intelligence could have been misled by the error.

The second error claimed by defendant relates to the instruction given at the instance of plaintiff on the measure of damages. Included in the elements of damage is "loss of earning capacity, if any, which you believe from the evidence he has sustained or will necessarily sustain in the future as a direct result of the injuries received as shown by the evidence." It is urged there is no evidence to support damages of this nature, but we think otherwise. There is substantial evidence tending to show a physical impairment from the injury which, in a measure, incapacitates plaintiff from following his vocation and thereby results in a loss of earning

power, and that this condition, in all likelihood, will be permanent. The fact that plaintiff is not, and will not be, wholly disabled from work does not preclude him from recovering the damages he will reasonably sustain in consequence of a decreased capacity for labor directly caused by the injury.

Finally, it is argued by defendant that the first in-instruction given on behalf of plaintiff is erroneous, but we find it to be free from just criticism. Plaintiff's cause of action is founded not only on the negligent act of defendant in failing to exercise reasonable care to provide him a reasonably safe place in which to work, but also of the negligent act of ordering an inexperienced servant to work in a place which he knew, or by the exercise of ordinary care should have known, was imminently dangerous, without informing the servant of the extent of the risk he was directed to encounter. Evidence was adduced which made each of these acts an issue of fact, and it was proper to submit both issues to the jury.

The judgment is affirmed. All concur.