INEZ HARTMAN ET AL. v. UNION ELECTRIC LIGHT & POWER COMPANY ET AL., Appellants.—53 S. W. (2d) 241.

Division Two, September 28, 1932.

*Holland, Lashly & Donnell* and *Harold C. Ackert* for appellants.

232

*A. B. Holmes* and *Frank Coffman* for respondent.

FITZSIMMONS, C.—Ralph A. Hartman, while working for appellant, Union Electric Light and Power Company, fell from a transmission line tower at Valmeyer, Illinois, and was killed. Respondents, his widow and dependent children, filed a timely claim before the Missouri Workmen's Compensation Commission, which awarded compensation in the sum of $8,866, payable in installments over a period of 435.8 weeks. Appellants, the employer and its insurer, took an appeal to the Circuit Court of St. Francois County which affirmed the award. From the judgment of the circuit court appellants appealed to this court. It was admitted that Hartman lost his life by accident arising out of and in the course of his employment, but liability was denied upon the ground that the Missouri Workmen's Compensation Commission did not have jurisdiction over the case for the reason that the accident occurred in Illinois which has a compulsory Compensation Act.

The deceased, Ralph Hartman, was employed December 3, 1929, by Union Electric Light and Power Company in the construction of its substation at Rivermines, St. Francois County, Missouri, and he was so employed to the time of his death on September 6, 1930. During the period of his employment Hartman and his family lived at Rivermines and, prior to that, at Rolla, Missouri. George W. Couch, who hired Hartman was, at the time of the employment, superintendent

of construction of the station at Rivermines. But on May 28, 1930, Couch was also appointed superintendent of transmission and his jurisdiction was extended over the transmission lines of the Electric Company between its plants at Cahoka, Illinois, and Rivermines, Missouri. After Couch took charge of the transmission lines he sent Hartman to Illinois twice. The first time was on a Sunday to make repairs, and the second time was September 3, 4, 5 and 6, 1930, on which latter day Hartman fell and was killed. Of the work which Hartman and others were doing at the time of his death, Couch testified before the Commission:

"Q. Did you have any men working over there prior to the time you sent Mr. Hartman over? A. No; not on maintenance.

"Q. What kind of work were they doing? A. More construction work, installing some porcelain signs on the tower—a number of signs. When a plane goes over the line they could read the tower numbers from the air—large porcelain signs, letters six inches.

"Q. Was that temporary work in Illinois or was it permanent transfer, Mr. Couch? A. It was just a small job. They had almost completed the job that afternoon when he got hurt; another three hours, come back, and wouldn't have further work over there for two weeks.

"Q. Then this permanent job was at Rivermines, Missouri? A. Yes; I would say it was, because he hadn't been transferred over to the transmission department.

"Q. And his original contract was entered with you at Rivermines? A. Yes."

Couch had been given the task of forming a permanent transmission-repair crew from the experienced linemen in the construction force at Rivermines, and from time to time he tried out these men on the lines and towers. Hartman was on one of these try-out jobs when he was killed.

Appellants offered in evidence the Illinois Workmen's Compensation Act. It is elective except that, by the terms of Section three, its provisions apply automatically without election to certain enterprises or businesses which are declared to be extra hazardous. Among these businesses is electrical work.

I. Section 12 (b) of the Missouri Workmen's Compensation Act (Sec. 3310, R. S. 1929) is as follows: "This chapter shall apply to all injuries received in this State, regardless of where the contract of employment was made, and also to all injuries received outside of the State under contract of employment made in this State, unless the contract of employment in any case shall otherwise provide."

Appellants concede that the Missouri Workmen's Compensation Act was part of Hartman's contract of employment. But they argue that when Hartman went to Illinois to work on the transmission

towers, he and his employer in legal effect modified the contract of employment by substituting for the Missouri Compensation Act the automatic section of the Illinois Compensation law relating to hazardous businesses because employer and employee were presumed to know the compulsory nature of the Illinois law. Appellants support this point with citations from many jurisdictions beyond Missouri and Illinois. With much learning, they stress the rule that a contract, made in one place, to be performed either wholly or in part in another, is to be governed by the law of the place of performance. Respondent opposes with more than a score of far-flung authorities. In our opinion the point should be ruled against appellants for reasons to be found in Missouri and Illinois law.

██ It is conceded that the Missouri Workmen's Compensation Act is not compulsory, but is elective (De May v. Liberty Foundry (Mo.), 327 Mo. 495, 37 S. W. (2d) 640) and that our law is contractual in nature. [State ex rel. Brewen-Clark v. Missouri Workmen's Compensation Commission (Mo.), 320 Mo. 893, 8 S. W. (2d) 897.] The validity of the Illinois Workmen's Compensation law on the other hand rests upon the police power of that state. [Zurich General Accident & Liability Ins. Co. v. Industrial Commission, 325 Ill. 452, 156 N. E. 307; McNaught v. Hines, 300 Ill. 167, 133 N. E. 53.] And Section 3 of the Illinois law, imposing compulsory compensation upon hazardous businesses stands alone upon the police power, "under which the Legislature exercises supervision over matters affecting the common weal, and enforces the observance by each member of society of his duty to others and the community at large, and prescribes regulations promoting the health, peace, morals, education and good order of the people, and legislates so as to increase the industries of the state, develop its resources, and add to its welfare and prosperity." [Grand Trunk Western Ry. Co. v. Industrial Commission, 291 Ill. 167, 125 N. E. 748.] A long line of Illinois cases defines the police power to be inherent power of the State to protect the public against things inimical to its health, safety, morals or general well-being, a definition familiar in the courts of Missouri. [Tranbarger v. Chicago & Alton Ry. Co., 250 Mo. 46, 156 S. W. 694.] The Illinois Compensation Act (Illinois Revised Statutes 1929, Chap. 48, sec. 138 et seq.) is entitled "An Act to promote the general welfare of the people of this State by providing compensation for accidental injuries or death suffered in the course of employment within this State, and without this State where the contract of employment is made within this State," etc. While we do not feel called upon to decide the question, we have grave doubt whether under the facts of this case the dependents of Ralph Hartman could have invoked the compulsory section of the Illinois law, resting alone, as it does, upon the police power of that state. The

Hartmans lived in Missouri and could not have become charges upon the people of Illinois, if the death of the husband and father had left them in need of aid.

It is true that it was held in Victor Chemical Works v. Industrial Board of Illinois, 274 Ill. 11, 113 N. E. 173, that nonresident alien dependents of an alien who lost his life in the course of his employment were entitled to the benefit of the Illinois Workmen's Compensation Act. But that decision rested upon the statute which expressly included aliens in its definition of an employee. The employer in its defense stressed the alien rather than the nonresident character of the claimants. The Supreme Court of Illinois in its opinion (113 N. E. 173, 1. c. 177) discussed the general welfare clause in the title of the Illinois Compensation Act and pointed out that "The general welfare of the people of the state or citizens of the state, might well be promoted by providing compensation for accidental injuries or death suffered by aliens, as well as citizens, in the course of employment within the state." This case sharpens our doubts that the police power of Illinois would sanction the extension of the beneficences of its law to dependents living in Missouri, especially as our State has a Compensation Act sounding in contract to which the deceased Hartman was a party.

But we find the best answer to appellants' contention when we turn to our own law books. The extraterritorial section of the Missouri Compensation Act (Sec. 3310, R. S. 1929), is construed in State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 8 S. W. (2d) 897, 1. c. 899. Amick, a resident of Missouri, was employed by relator in this State as a salesman to travel in Missouri, Kansas and Oklahoma. He slipped and fell upon an icy sidewalk in a city in Oklahoma, and he invoked against his employer the Missouri Compensation law. The question of the jurisdiction of the Missouri Compensation Commission was raised by prohibition proceedings. The authority of the Commission to act was upheld by this court for these reasons (8 S. W. (2d) 1. c. 899):

"The Workmen's Compensation Act of this State is elective. The acceptance of its provisions is entirely optional with both employer and employee. When accepted by them it enters into and becomes an integral part of the contract of employment. The act was adopted after the employment of Amick by relator; but, as both accepted it, as must be assumed from the record here, it immediately became a part of, and to the extent of all its terms and provisions supplemented, the contract of employment existing between them. Such contract was made in this State, and, with respect to the payment and the acceptance of compensation for injury in case of accident, wherever it occurred, was to be performed in this State; conse-

quently all questions relating to its construction and the legal obligations arising from it are to be determined according to the laws of this State. By its terms relator agreed to pay, and Amick, the employee, agreed to accept, compensation in case of accident in accordance with the provisions of the act. These mutual promises are binding upon the parties and enforceable in any jurisdiction the same as any other contract. The cause of action alluded to by relator accrued, not from the commission of a tort in Oklahoma, but through the breach of a contractual obligation which was entered into in Missouri and which was to be performed in this State. The breach consisted of relator's refusal to pay the stipulated compensation.''

The logic of the foregoing case is a complete refutation of the attack made by appellants on the jurisdiction of the Commission in this case. The extraterritorial section of the Missouri Compensation Act, when invoked before the Missouri Commission under a contract of employment made in Missouri, is operative, whether the accidental injury or death occurred in another state having an elective or compulsory compensation act or no such act whatever.

██ II. Appellants next urge that the judgment should be reversed because there was not sufficient competent evidence to sustain the award in so far as the award was computed under subdivision (d) Section 3320, Revised Statutes 1929. This section has ten subdivisions designated from (a) to (j) both inclusive, and obviously expressive of the intention of the Legislature to furnish a basis of computation of compensation in every case that might arise. Subdivision (a) of Section 3320 provides as the basis of computation the annual earnings which the injured person received if in the employment of the same employer continuously during the year next preceding the injury. This method did not apply to the instant case because Hartman was in the service of the electric company only from December 3, 1929, until his death on September 6, 1930. Subdivision (b) merely defines the phrase ''employment by the same employer'' used in subdivision (a). Appellants ground their assignment of error upon their construction of subdivisions (c) and (d) of Section 3320 which are as follows:

''(c) If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period.

''(d) As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earn-

ings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation.''

The Commission computed the compensation under subdivision (d). The record of the Electric Company showed that, between December 3, 1929, and September 6, 1930, Hartman worked 252 days and earned in wages at hourly rates amounting to $1,903.57. Appellants contend that the Commission erred in not using Subdivision (c) which they argue, is the only method of computation applicable to this case because Hartman did not work a full year. They further state that the first method of calculation under subdivision (c) did not apply because the evidence showed that there were no other employees of the same classification as Hartman at the same location. They next point out that there is no testimony in the record to show resort to the second method of calculation of subdivision (c) namely the earnings of employees in neighboring employments during the preceding year. From these premises appellants conclude that there was a total failure of proof.

In our opinion appellants err in their conclusion that subdivision (c) alone applies because it alone covers the case of an injured person who has not been in the service of the same employer for the full year preceding the accident. Subdivision (e) relating to employees in businesses in which it is the custom to operate for only a part of the whole number of working days, of necessity applies to workmen of less than full-year employment. Subdivisions (f) as to injured employees drawing less than full pay, (g) governing the wage elements of board, rent, lodging and fuel furnished by the employer, (h) concerning employees, drawing compensation on account of a prior accident and (j) as to minors are alike applicable to persons who have worked the whole or only a part of a year before the accident for which compensation is to be computed. In fact experience teaches that persons of the classes mentioned in these last subdivisions are not likely to have at any time a record of a full year of service with the same employer. Subdivision (d) itself, which appellants say is not applicable in this case, by implication applies to persons who had not worked a full year before injury, but in a particular business which had not been operating a full year but which by custom was an all-year business.

The objection that there was a failure of proof because there was no evidence of annual earnings ''of persons of neighboring employments of the same kind,'' would, if sustained, defeat recovery for want of comparatives. The record shows that Hartman at the time of his death was classed as an electrical foreman at the substation of the Union Electric Light and Power Company at Rivermines in St. Francois County, Missouri. That substation was connected by long-distance electric lines with the plant of the same company at

Cahoka, Illinois, opposite St. Louis. Other power lines 110 miles long were about to be built between the Rivermines substation and the power plant at Bagnell Dam. Hartman was the only employee at the Rivermines substation who was classed as an electrical foreman. It is not reasonable to believe or, in this case, to assume, as the statute does in proper instances, that for a year before Hartman was killed there were other persons classed as electrical foremen working at other substations under construction in the neighborhood of Rivermines. And even if these comparatives were available why should they be used, when there were in evidence the accurate records of Union Electric Light and Power Company showing the number of hours that Hartman had worked each day for 252 days and the hourly wage for that time? At best comparatives are a last resort when direct methods of computation are wanting.

But appellants further object that subdivision (d) cannot be used as a basis of computation of compensation because there is in this case no proof showing what was the *custom* of the Union Electric Light and Power Company to operate throughout the working days of the year. Custom is a "practice or course of acting." [17 C. J. 446, citing Spencer v. Bruner, 126 Mo. App. 94, 103 S. W. 578; Brunke v. Missouri, etc., Tel. Co., 115 Mo. App. 36, 90 S. W. 753.] The record shows that from December 3, 1929, to September 6, 1930, Hartman worked 252 days in the construction of the substation at Rivermines. His working hours were nine and a half hours a day, three days a week and twelve and a half hours a day four days a week. In other words he put in seven days a week, and in much less than a year he, at this rate, would have worked substantially more than 300 days which is the annual basis of the Compensation Act. But adhering strictly to the facts of the record, it shows that Hartman worked on the construction of the substation at Rivermines from December 3, 1929, to September 6, 1930, and that George W. Couch was superintendent of construction of the substation from July 1, 1929, at least to September 6, 1930, when Hartman was killed. This seems to us abundant proof that the course of acting, that is, the custom of the Union Electric Light and Power Company, in the construction of its substation at Rivermines, was to operate throughout the working days of the year preceding Hartman's death. This assignment of error, therefore, is ruled against appellants.

III. Finding no reversible error the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.