Mollie D. Sayles v. Kansas City Structural Steel Company and American Mutual Liability Insurance Company, Appellants. —128 S. W. (2d) 1046.

Court en Banc, June 6, 1939.

*Schwartz & Schwartz* for appellants; *Maurice J. O'Sullivan* of counsel.

758

*N. R. Fisher* and *E. H. Gamble* for respondent.

COOLEY, C.—Appeal from a judgment of the Jackson County Circuit Court reversing an award of the Workmen's Compensation Commission, hereinafter called the Commission. Claimant-Respondent is the widow and sole dependent of Max S. Sayles, deceased, who was accidently killed while in the employ of Kansas City Structural Steel Company, on February 2, 1937. Appellant insurance company was the employer's insurer. Both employer and employee were operating under the Workmen's Compensation Law, if Sayles was an "employee" within the meaning of that law and it is not

disputed that Sayles' death resulted from injuries received in the course of and arising out of his employment. Claimant timely filed her claim for compensation, alleging that her deceased husband's weekly wage had been $78. Computed on that basis according to Section 3319, Revised Statutes 1929 (Mo. Stat. Ann., p. 8254), the death benefit provided by law would be $15,600 to be paid in weekly installments of $20 each. The Commission found that Sayles' average annual earnings exceeded $3,600 per year and that he was not, therefore, an "employee" within the meaning of the Workmen's Compensation Law, and denied compensation for that reason. The Circuit Court reversed that "award," and ordered the cause remanded to the Commission, holding that on the undisputed facts the deceased was an employee and within the provisions of the Compensation Act. That is the only disputed issue on this appeal.

The evidence favorable to the Commission's finding tended to show the following:

Sayles began working for the employer, Kansas City Structural Steel Company, as an iron worker, about 1922. Until the latter part of June, 1934, he did not work all the time. His work is described as having been at first "intermittent,"—working only at times when the employer had work for him, which was not all of the time, though most of the time. During that period he was paid by this employer only for the time he actually worked for it, and when not working for it he would occasionally work for others, as he was privileged to do. He was a competent and valuable man and said employer desired to keep him in its employ and to avail itself of his entire time and service. To that end it put him on full time basis in June, 1934, paying him thereafter $78 per week until his death, February 2, 1937. He received that stipulated amount regularly, whether he worked all the time or not. Mostly he did work all of the time. The plant operated continuously throughout the year and "the employer most generally was able to keep him working." After he was put on full time basis in June, 1934, he was classed as assistant superintendent. "There would be times when they didn't have any erection work to do and Sayles always came over to the plant and looked after the erection equipment, got it in shape for the next job or he might go around to the different jobs pending and see what equipment was needed on them, etc. If he was off for a day or a few days on some personal mission or vacation he received his regular weekly pay. During the period from June, 1934, he was off on a vacation once or twice." Once during that period he was given a two weeks' vacation. No deduction was made from his pay on account of such "time off" or vacations. It was testified that "the superintendent and assistant superintendent were all paid by the month or the week and that if Sayles worked on different jobs during the week his wage was figured on a six day basis for the

purpose of figuring each job.'' It was explained that this was done in order to allocate to each job its proportionate and proper cost and for bookkeeping purposes. A witness for claimant, Thomas Mc-Curnin, Superintendent of erection work, testified that there was never any real arrangement made concerning overtime but if Sayles worked ''an excess amount of overtime or on Sunday the employer always paid him double time for it;'' that if he worked overtime only fifteen or twenty minutes or someting like that he ''never turned in any time'' or got paid extra for it, but ''if it was an hour or two hours or something like that the employer generally took care of it;'' that he worked five days a week but generally called up or reported at the office on Saturday morning to see if there was anything to do; that Saturday was not a usual working day in that craft and that ''this $78.00 was considered a week's pay;'' that the ordinary iron worker was paid double time Saturday and Sunday; that Sayles' duties, after he was employed as assistant superintendent and put on full time basis (as stated above) were ''looking after the jobs and supervising them,'' and occasionally he had seen Sayles do actual physical labor such as the ordinary iron worker does, ''like a lot of us old timers he just couldn't let it alone.'' There was no written contract of employment between the employer and Sayles and the oral agreement fixed no definite term as to duration. Sayles could have been discharged or could have quit at any time.

Another witness, Casler, the employer's timekeeper and paymaster, testified that in June, 1934, McCurnin, from whom he received directions as to the making up of pay rolls, directed him to put Sayles on a full time pay basis, which he did; that McCurnin could have discharged Sayles at any time but had he done so Sayles ''would have drawn $78.00 per week for that week whether that time was the end of the pay period or not;'' that a ''normal day on a job'' was eight hours, but that Sayles didn't always work just eight hours; that besides erection work he worked around the warehouse on equipment; ''that he got paid $78.00 a week whether he actually put in his time or not; that he might go to work in the morning and in case of a storm or anything came up the crew would knock off he naturally didn't have anything to do, any more work to do that day, but he would get paid for that day just the same; . . . that he drew his wages for six days a week whether he worked on Saturday or not; that his wages were broken down to $13.00 a day and $1.62½ an hour for accounting purposes.'' There was other testimony to the effect that after June, 1934, Sayles was paid $78 a week whether he worked or not and that no deduction was made when there was no work; that ''if he worked only forty hours one week instead of forty-eight, he would still get $78 a week;'' that he worked on different jobs ''and his wages for accounting purposes were prorated

for each job by taking the amount of time he worked on each job in relation to his weekly wage.'' (The testimony relating to prorating and allocating Sayles' wages to different jobs, as by the day or hour, was introduced in explanation of certain time sheets or pay roll records which were in evidence.)

The Commission, by majority vote, found ''in favor of the . . . employer and insurer'' and against the claimant, and awarded ''no compensation for the above accident.'' The Commission made this finding: ''We find from the evidence that the average annual earnings of Max S. Sayles, deceased, exceeded three thousand six hundred dollars, and he is, therefore, not an employee within Section 3305, R. S. Missouri, 1929.'' If the ''average annual earnings'' be reckoned upon the basis of what this employer paid Sayles during the whole period he worked for said employer, beginning with 1922, and averaged over the whole period from 1922 till his death, the average was slightly less than $3600 per year. If reckoned upon the basis of what he received from the time he was put on full time basis in June, 1934, as assistant superintendent, the average was more than $3,600 per year, as the Commission found. One Commissioner dissented, believing that Sayles was an employee within the meaning of the Act because he was not employed ''for specific length of time and he could be discontinued from employment at any time, and though he earned more than $3600 during year preceding injury, he was an employee and not excluded from the Compensation Act;'' citing Klasing v. Fred Schmitt Contracting Co., 335 Mo. 721, 73 S. W. (2d) 1011. The Circuit Court, in reversing the Commission's award and remanding the cause, evidently took the same view and for the same reason.

I. Respondent challenges our appellate jurisdiction, calling attention to recent decisions in which this court has held that it did not have jurisdiction in cases where the award was to the injured employee for disability, the award being payable in weekly installments, as provided by statute, for a stated number of weeks or while the disability continued and where, if the employee should live and the disability continue for such number of weeks, the total amount to be paid would exceed $7500. It was so held on the ground that, in such situation, it did not certainly appear that the amount to be paid would exceed $7500 and the facts giving this court appellate jurisdiction must affirmatively appear from the record. In death cases the statute provides that the employer shall pay ''a single total death benefit.'' [Sec. 3319, R. S. 1929, Mo. Stat. Ann., p. 8254.] [Unless otherwise indicated, references to our statutes hereinafter will be to R. S. Missouri, 1929, and corresponding Sections in Mo. Stat. Ann.] It is true such benefit, or compensation, is to be paid in weekly installments and in case the surviving widow is the

sole dependent (as here), the payments cease upon the death or remarriage of the widow, which of course *may* happen before the whole amount of the "single death benefit" has been paid. Respondent argues that the total amount which eventually will have to be paid is thus rendered uncertain and it therefore does not clearly and certainly appear that such amount will exceed $7500, the amount necessary to give appellate jurisdiction to this court on the constitutional ground of amount in dispute. This question was considered and decided, adversely to respondent's contention, in Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S. W. (2d) 713 (En Banc), where the Commission made an award to the dependent widow which, considered as "a single total death benefit" exceeded $7500. To like effect see Platies v. Theodorow Bakery Co. (En Banc), 334 Mo. 508, 66 S. W. (2d) 147, 148, approving the Shroyer case. The principle of the Shroyer case was applied by Division One of this court in Edwards et al. v. Al Fresco Advertising Co., 340 Mo. 342, 100 S. W. (2d) 513, 514, wherein the Commission had denied compensation in a death case. [See, also, Hohlstein v. St. Louis Roofing Co., 328 Mo. 899, 42 S. W. (2d) 573 (Division Two).]

In the instant case the Commission denied compensation. On the alleged and proved (indeed conceded) facts the single total death benefit claimed by the widow, sole dependent, and which she is entitled to have awarded to her, if entitled to recover at all in this proceeding, exceeds $7500. Respondent urges that we should reconsider and overrule the Shroyer case on the question of jurisdiction. This we decline to do, believing that it correctly decided the question. The Shroyer case points out the distinction, as affecting our appellate jurisdiction, between an award to dependents on account of death and an award for disability to the injured employee.

II. The Commission's finding of facts, if supported by substantial evidence, is conclusive upon the reviewing court. [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, 604; Adams v. Continental Life Ins. Co., 340 Mo. 417, 101 S. W. (2d) 75, 81; Doughton v. Marland Refining Co., 331 Mo. 280, 53 S. W. (2d) 236, and cases cited.] The Commission need state only the ultimate constitutive facts and need not state the evidentiary facts upon which the ultimate facts depend. [Leilich and Doughton cases, supra.] And it has been held that even though the Commission has stated only a legal conclusion rather than a finding of fact its award will not be reversed if its conclusion is supported by sufficient competent evidence (Waring v. Met. Life Ins. Co., 225 Mo. App. 600, 39 S. W. (2d) 418, 423, Metting v. Lehr Constr. Co., 225 Mo. App. 1152, 32 S. W. (2d) 121), which question is to be determined from the facts taken in the light most favorable to the conclusion of the Commis-

sion. [Doughton case, supra.] See, also, for effect of a general finding, State ex rel. Buttiger v. Haid et al., 330 Mo. 1030, 51 S. W. (2d) 1008, and that the evidence is to be considered in the light most favorable to the Commission's finding, Adams v. Continental Life Ins. Co., supra, citing with approval the Doughton case. Tested by these rules there can be no doubt that the Commission's finding that Sayles' "average annual earnings" exceeded $3600 per year, if we count from June, 1934, when he was put on full time pay as assistant superintendent, is supported by substantial evidence.

III. Respondent relies strongly on Klasing v. Fred Schmitt Contracting Co., supra. In that case the plaintiff was a bricklayer and the defendant a building contractor for whom the plaintiff worked. The suit was at law for damages for personal injuries sustained by plaintiff due, he claimed, to the defendant's negligence. The defendant was operating under the Workmen's Compensation Act and the plaintiff had not rejected it, so if he was an employee within the meaning of the Act it applied and precluded him from recovery in a common law action. The court (Division One) held that he was an employee within the meaning of the Compensation Act. After stating the facts and discussing the legal questions involved the court said, 335 Mo. 1. c. 730, 73 S. W. (2d) 1. c. 1015:

"Our conclusion is that it was the legislative intent that the excluding provision in our State should apply only to employment under a contract for a definite term of one full year or more at a fixed or determinable salary or wage, so that if the term of employment be for one year only the minimum earnings thereby specified or fixed would for the whole year exceed $3600 or if the term of employment be for more than one year, or for two or more years, the average of such earnings for the whole period, or term of employment, computed on a yearly basis, would be in excess of $3600 a year."

If we should accept and apply that conclusion, thus broadly stated, it would dispose of this case adversely to appellants. They insist that it should be treated as *obiter dictum* because, they say, the facts stated in the opinion and the result reached did not call for it. On the facts we think the case might be distinguished from the case before us. One difference is that Klasing was not employed steadily, nor at a fixed salary or wage per week, month or year. When the employer "had a job" for him he was called and assigned to such job. When not working for such employer he might and occasionally did work for others. He was paid by the hour on the basis of union scale wages, and only for the time he actually worked. During the year immediately preceding his injury he earned $3642.25, but the court said he had worked for said employer pursuant to the same arrangement for three consecutive years next preceding the date

of his injury and for the three years or any two of them his earnings did not average $3600, since he did not earn that sum or anything near it except in the one year immediately preceding the injury. There were other facts in the Klasing case which, we think, tend to distinguish it from the instant case but in the view we take of the law it is needless to point them out. The above quoted conclusion in the Klasing case is stated as apparently without qualification or exception. We are unable to agree with it.

Statutes are to be construed, if possible, so as to harmonize and give effect to all of their provisions, Gasconade County v. Gordon, 241 Mo. 569, 145 S. W. 1160; "and provisions not therein found plainly written or necessarily implied from what is written will not be imparted or interpolated therein in order that the existence of such right may be made to appear when otherwise, upon the face of said act, it would not appear." [Allen v. St. Louis-San Francisco Ry. Co., 338 Mo. 395, 402, 90 S. W. (2d) 1050, 1053.] Section 3305, which defines "employee," reads (so far as here pertinent): "The word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer . . . under any contract of hire, express or implied, oral or written or under any appointment or election, but shall not include persons whose average annual earnings exceed three thousand six hundred dollars." That section does not define "earnings" or provide how they are to be determined. Section 3320 prescribes the basis for computing compensation. [Newman v. Rice-Stix Dry Goods Co., 335 Mo. 572, 73 S. W. (2d) 264, 269.] Paragraphs (a) and (b) of said section read:

"(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury.

"(b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident uninterrupted by absence from work due to illness or any other unavoidable cause."

Section 3319, which provides for the benefit or compensation to dependents in case of death of an employee, refers to Section 3320. We shall speak further of Sections 3319 and 3320. Going back to Section 3305, when the Legislature said that "employee" shall be construed to mean "every person" working under any contract of hire, express or implied, oral or written, and in the same sentence added "but shall not include 'persons' whose average annual earnings exceed three thousand six hundred dollars" it clearly, we think, used the word "persons" the second time in the same sense as previously used in the same sentence, viz., persons working under any contract of hire, express or implied, oral or written. So, by the statute, persons working under contract of hire, express or im-

plied, oral or written, whose average annual earnings exceed $3600, are excluded from the operation of the Act. We so construed the excluding clause of Section 3305 in Russell v. Ely & Walker Dry Goods Co., 332 Mo. 645, 652, 60 S. W. (2d) 44, 46, (3).

It seems to us that to hold that the excluding provision of the statute applies only to employment for a definite term of one full year or more at a fixed salary or wage is to read into the statute something that is not written there nor necessarily—or even fairly—implied from what is there written. Indeed the implication, if any is to be indulged, is the other way. A contract for a definite term at a fixed salary or wage would be an express, not an implied, contract, and the statute expressly mentions implied contracts. Also, it says any contract oral or written. In view of our Statute of Frauds, Section 2967, Revised Statutes 1929 (Mo. Stat. Ann., p. 1835), there cannot be an enforceable oral contract for more than one year nor one that cannot be fully performed within one year from the making thereof. If for example, an oral agreement for the rendition of service for a term of one year is made today but the year is to begin, say, a week hence, the agreement could not be fully performed within one year from the making thereof and would be within the Statute of Frauds and unenforceable. [Truitt v. Rothschild-Greenfield Co. (Mo. App.), 32 S. W. (2d) 770.]

■ Neither do we find in other provisions of the Compensation Act anything that in our judgment calls for construing the exclusion clause of Section 3305 to mean only employment under a contract for a definite term of one full year or more. Section 3319, which provides for death benefits, provides in paragraph (a) for certain expenses of the deceased's last sickness and burial expenses. Paragraph (b) provides for a single total death benefit, the amount thereof to be determined by first determining as a basis for computation 66⅔ per cent of the employee's average weekly earnings during the year immediately preceding the injury "as provided in Section 3320," and multiplying such sum by 300. We have quoted paragraphs (a) and (b) of Section 3320. Other paragraphs of that section point out how "annual earnings" are to be determined under various other circumstances—as:—(c), if the injured person has not been employed by the same employer for the full year preceding the injury; (d), as to employees in employments which customarily operate throughout the working days of the year and (e), in employments operating only part of the whole number of working days; (f), where the injured employee has earned either no wage or less than the earnings of adult day laborers in similar employments in the locality; (g), that in computing annual earnings certain items of board, rent, etc., furnished by the employer as part of the employee's remuneration are to be included. All these paragraphs use the term "annual earnings" or its equivalent. In none do we find language

indicating that the employment must have been under a contract for a definite term and in several it could scarcely have been so. Section 3320 uses the terms "injured person" and "employee" but, as we have shown, Section 3319, providing for death benefits, specifically points to Section 3320 for the method of computing such benefits, as in terms do Sections 3312 ("Waiting period—compensation—basis for payment") and 3315 ("Permanent partial disability—compensation for various injuries"), and in effect 3316, relating to permanent total disability. Section 3316 also uses the term "average annual earnings." It thus appears that Section 3320 provides the basis for computing compensation for death as well as disability resulting from injury. And Section 3305 says, "Any reference to any employee who has been injured, shall, when the employee is dead, also include his dependents, and other persons to whom compensation may be payable."

Paragraph (a) of Section 3320 provides that the compensation shall be computed on the basis of the "annual earnings" received by the injured person "as salary, wages or earnings" if in the employment of the same employer continuously during the year next preceding the injury. Paragraph (b) says "Employment by the same employer shall be taken to mean employment . . . in the grade in which the employee was employed at the time of the accident. . . ." At the time of the accident Sayles was employed in the same capacity—in the grade—in which he had been employed continuously for two years and seven months next preceding. He was a competent man, liked and valued by his employer and the latter desired to keep him and to be assured of his continued and exclusive services. There is every reason to believe that his employment would have continued, not only through the then current year but thereafter. Though he could have been discharged or could have quit at any time there is nothing in the evidence to indicate a likelihood of such thing happening. The evidence indicates strong likelihood that it would not have happened. Under the evidence the Commission could legitimately find that his employment was steady and continuous. See for discussion of this question Reid v. British and Irish Steam Packet Company, Limited (1921), 2 K. B. 319 (1921), W. C. and I. 336, so holding of a like employment under similar conditions.

It is argued by respondent that no change was made in the grade of Sayles' employment when he was put on full time pay basis in 1934, and that his earnings should be averaged for the whole period from the time he first began working for this employer in 1922, and they point to the fact that on pay roll sheets introduced in evidence, going back as far as 1930 and from then to the time of his death, his name appeared in the column headed "occupation" as "foreman." McCurnin testified that when he was put on full time pay in

1934 and thereafter he was "classed" as assistant superintendent and the nature of his duties as detailed in the evidence indicates a position of that nature rather than that of merely an ordinary foreman. Moreover, the designation or title under which he appeared on the pay roll sheets is not conclusive. When McCurnin directed Casler, the timekeeper and paymaster, to put Sayles on full time pay basis, it does not appear that he told him to change the title or designation under which Sayles had for several years been carried on the pay roll, and Casler may simply have neglected to do so or may have thought it unnecessary; the pay rolls not being designed particularly for the purpose of showing the grade of employment. Be this as it may the evidence justified the conclusion that there was a change made in June, 1934, not only in the character of Sayles' employment as to regularity and permanency and the manner of pay, but also, to some extent at least, in the nature of his duties. We think that, clearly, paragraphs (a) and (b) of Section 3320 apply and that in determining Sayles' "average annual earnings" as mentioned in the exclusion clause of Section 3305, only the time from June, 1934, to his death, during which he was employed in the same grade of employment as at the time of the accident, can be considered. Thus considered his average annual earnings exceeded $3600 per year as the Commission found.

In applying the statute its provisions must be harmonized, if possible, as we have said. If claimant is entitled to compensation the amount must be computed on the basis fixed by Section 3320, since Sayles had been employed by the same employer and in the same grade of employment for more than a full year next preceding the accident, resulting that payment would have to be on the basis of $78 per week (not counting any overtime), or "annual earnings" of $4050. Exclusion from the Act is based on the "average annual earnings." Section 3305 does not define or point out how to determine "annual earnings." Section 3320 does. If payment of benefits must be based upon annual earnings, as determined under Section 3320, it would seem inconsistent and illogical to use a different measuring rod in determining "average annual earnings" in applying the exclusion clause of Section 3305, when the statute does not so command, as we think it does not.

In Klasing v. Fred Schmitt Contracting Co., supra, the court cites and quotes from Kelley's Dependents v. Hoosac Lumber Co., 95 Vt. 50, 113 Atl. 818. That case does seem to support the conclusion announced in the Klasing case. But there is a difference between the Vermont statute and ours that we think is worthy of note. The Vermont statute, General Laws (1917), Section 5758, defines " 'Workman' and 'employee' to mean a person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer, but not to include a person whose . . .

remuneration exceeds two thousand dollars a year.'' It does not, however, contain the further words of our statute, characterizing the contract as "express or implied, oral or written,"—words which the Legislature must have used with a purpose and which seem to us to have significance. Also the Vermont court points out that the Legislature had not pointed out the proper method of ascertaining the remuneration, which left the court at liberty to ascribe to the provision a meaning which in its judgment best accorded with the general legislative intent and best carried into effect the beneficent purposes of the act. That portion of the opinion is quoted in the Klasing case. The Vermont court also pertinently said (95 Vt. 1. c. 53):

''The value of precedents is somewhat uncertain. A slight difference in the wording of the statutes or some small variation in the circumstances may impair the value of an outside decision when attempt is made to apply it here.''

Kelley's Dependents v. Hoosac Lumber Co., supra, is cited with approval in Livingstone Worsted Co. v. Toop, 48 R. I. 368, 138 Atl. 183; O'Bannon Corporation v. Walker, 46 R. I. 509, 129 Atl. 599; and Hauter v. Couer D'Alene Antimony Mining Co., 39 Idaho, 621, 228 Pac. 259. Those cases are also cited in the Klasing case and by respondent herein. Without taking space to distinguish them it may be said that in each there were facts and circumstances that, in our opinion, might differentiate it on the facts from the case before us, but it may also be said that the Rhode Island cases tend to sustain the proposition that the Compensation Act should be construed with a liberality calculated to effectuate its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class. The Idaho case quotes with apparent approval the holding in Kelley's Dependents, supra, to the effect that the exclusion clause of its statute applies only to employments for a definite term of one full year or more.

Conceding that the Compensation Law was enacted for a beneficient purpose and should be construed so as best to effectuate that purpose so far as that can legitimately be done, we must take the statute as we find it. We are not at liberty to write into it, under the guise of construction, provisions which the Legislature did not see fit to insert. Had the Legislature intended to exclude only employments under contracts for a definite term of one full year or more it could easily have said so in plain terms. If the statute needs alteration it is for the Legislature, not the courts, to make it. In our opinion the Klasing case is wrong and should not be followed on this point. We think the circuit court erred in reversing the finding and award of the Commission and remanding the cause to that body. It results that the order and judgment of the circuit court should be reversed and the cause remanded to that court, with

directions to affirm the finding and award of the Commission. It is so ordered.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the Court en Banc. All concur, except *Hays, J.,* absent.