MELBA MAY MOSSMAN, APPELLANT, v. CHICAGO AND SOUTHERN AIRLINES, INCORPORATED, A CORPORATION, AND GREAT AMERICAN INDEMNITY COMPANY, A CORPORATION, RESPONDENTS.—153 S. W. (2d) 799.

St. Louis Court of Appeals. Opinion filed July 8, 1941.

Motion for rehearing overruled September 12, 1941.

*A. A. Alexander* for appellant.

*Lashly, Lashly, Miller & Clifford, Clark M. Clifford* and *Robert G. Maysack* for respondents.

ANDERSON, J.—This is an appeal from a judgment of the Circuit Court of St. Louis County, which affirmed a final award of the Missouri Workmen's Compensation Commission, is an action brought by Melba May Mossman, widow and dependent of Russell C. Mossman, against the Chicago and Southern Air Lines, Inc., employer, and the Great American Indemnity Company, insurer, for compensation for the death of her husband, who had been accidentally killed while employed as a pilot for said air lines. The Commission found that the deceased Mossman was not an employee of the said Chicago and Southern Air Lines, Inc., within the meaning and intent of Section 3305, Revised Statutes of Missouri 1929 (now Sec. 3695, R. S. Mo. 1939), because his average annual earnings exceeded the sum of $3600.

At the hearing before the Referee, it was admitted that Russell C. Mossman was in the employ of the Chicago and Southern Air Lines, Inc., and met his death while in the course of his employment, on August 5, 1936, which death was caused by the falling of an airplane near Lambert Field in St. Louis County, Missouri. The employer was a major employer under the Missouri Workmen's Compensation Act, and the Great American Indemnity Company was the insurance carrier covering the employer's liability under the compensation act.

The evidence showed that deceased Mossman was first employed by the Chicago and Southern Air Lines, Inc., in June, 1935, as a pilot, under a contract of employment made in Chicago, Illinois, about June 1, 1935, between deceased and Bruce E. Braun, Vice-President in charge of operations for the Air Lines Company. Mossman went to work on June 15, 1935. There was no contract for any definite length of time of service. Mossman could quit at any time, and the employer could discharge him at any time.

Thereafter he continued to work as a pilot, until June, 1936, at which time the employer discontinued the use of Stinson planes, which it had theretofore been using, and substituted Lockhead Electra

planes in their place. This latter type of plane represented improved equipment, which enabled the employer to reduce its force of first pilots, and, because of the rule of seniority, Mossman was at said time demoted from first line pilot to "reserve" pilot, in which capacity he worked from June 1, 1936, until the date of his death on August 5, 1936.

The evidence further showed that the pilots employed by the Air Line Company fell under one of three classifications: first pilot, co-pilot, and reserve pilot. The first pilot was in charge of the ship, his authority being somewhat analogous to that exercised by the master of a vessel on the high seas. He gave orders to the co-pilot, and had full responsibility for the ship. The co-pilot assisted the first pilot, and his presence on every flight was required by the regulations of the Bureau of Air Commerce. The duties of a reserve pilot were to relieve either the first pilot or a co-pilot as the occasion might require. The pay of a first pilot depended upon the number of hours in the air and the mileage flown, the evidence showing that the average monthly earnings of a first pilot for the year preceding August 6, 1936, was $534.14. A co-pilot was paid a straight salary of $225 per month, with no extra pay for hours flown. A reserve pilot, while working as a co-pilot received a co-pilot's pay, and while working as a first pilot received a first pilot's pay. When not working, he received $225 per month. In June, 1936, after his reduction to the *status* of reserve pilot, Mossman worked for two weeks as a first pilot, earning $252.75 as such, and worked two weeks as co-pilot, earning $112.50 as such. In July, 1936, he relieved a first pilot for two weeks, during which time he earned $310.86, and he also worked two weeks as a co-pilot, for which he received as compensation $112.50. From August 1st through August 5, 1936, he worked as co-pilot, earning $37.50. On the date of his death, August 5, 1936, he was working as a co-pilot.

The evidence further showed that said employer had nine first pilots, and each received two weeks' vacation per year, so that reserve pilots were employed approximately 4½ months in relieving first pilots on vacation. This relief work was done by Mossman and another reserve pilot, named Gossett. There was also testimony that a Mr. Fry might have done some of this relief work. The evidence showed that Gossett, as a reserve pilot, earned $4,604.39 from May 1, 1936, to April 30, 1937.

According to the evidence, Mossman's actual earnings from August, 1935, through July, 1936, inclusive, amounted to $6,124.41.

The record also showed that after the death of her husband, claimant, upon advice of counsel, filed a claim before the Industrial Commission of the State of Illinois for compensation under the Illinois Workmen's Compensation Act. Thereafter a settlement agreement was made between the parties, and approved by said Commission after a hearing, under which claimant received the sum of $4100, which

amount is in excess of the maximum amount of weekly payments payable under the Illinois law, when commuted and paid in one lump sum. Claimant also gave a common-law release of all claims against respondents.

The final award recited, "We find from the evidence that Russell C. Mossman (deceased), was not an employee of said Chicago and Southern Air Lines, Incorporated, within the meaning and intent of the Workmen's Compensation Law, and particularly within the meaning and intent of Section 3305, Revised Statutes of Missouri 1929, because his average annual earnings exceeded $3600; therefore, the Commission is without jurisdiction to entertain this claim on the merits." One of the Commissioners dissented.

By her assignment of errors in this court appellant challenges the judgment of the trial court in sustaining said final award of the Commission, on the theory that said award is based upon a misconception and misconstruction of the Compensation Act, and on the theory that the Commission did not pursue the proper method of ascertaining the average annual earnings of the said Russell C. Mossman.

Appellant contends that since Mossman was working for his employer as a co-pilot at the time of his death, his average annual earnings should be held to be the salary received by a co-pilot, to-wit, $2700. Respondents contend, on the other hand, that no change of grade was made in Mossman's employment at the time he was made a reserve pilot, and since the record shows that during the year immediately preceding his death he earned $6,124.41, the Commission properly ruled that it had no jurisdiction to make an award in appellant's favor. Respondents also contend that even though the court should hold that there was a change of grade, the annual earnings, not being otherwise determinable, should be computed on the basis of three hundred times his average daily earnings as a reserve pilot under Section 3320 (d), Revised Statutes of Missouri 1929 (now Section 3710 (d), R. S. Mo. 1939).

Was Mossman in the same grade of employment while working as a reserve pilot as that which he was in prior to June 1, 1936, when he occupied the position of first pilot? There is no statutory test by which we can determine the question. Section 3320 (a) (Section 3710 (a), Revised Statutes of Missouri 1939) provides that "compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages, or earnings if in the employment of the same employer continuously during the year next preceding the injury." Section 3320 (b) (Section 3710 (b), R. S. Mo. 1939) provides that "employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident uninterrupted by absence from work due to illness or any other unavoidable cause." The foregoing sections of the statute apply in determining the average

annual wage as mentioned in the exclusion clause of Section 3305, Revised Statutes of Missouri 1929 (new Section 3695, R. S. Mo. 1939) of the Act. [Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S. W. (2d) 1046.]

We must assume that the Legislature used the word ''grade'' in Section 3320 (b) in its plain, ordinary meaning. The word ''grade'' is ordinarily used to denote quality, value, relative position, rank, or standing. When used in that sense, there can be no doubt that Mossman suffered a change in ''grade'' when he was made a reserve pilot in June, 1936. The position of reserve pilot was one of less dignity than that of first pilot. While acting as such in relieving a co-pilot, he was subordinate to and subject to the orders of the first pilot. He, therefore, suffered a reduction in rank. It called for a reduction in wages. Hence, the value of the position was lowered. In a case under compensation, this fact, while not controlling, is certainly relevant to be considered on the question of change of ''grade.'' By reason of the change of ''grade'' of Mossman's employment, his actual earnings for the year preceding his death cannot be considered in determining whether he is covered by the Act, since under Section 3320 (b) he cannot be considered as having been employed for one year prior to the date of accident.

The question then in, What method shall be employed to determine whether he is an employee under Section 3305, Revised Statutes of Missouri 1929 (now Sec. 3695, R. S. Mo. 1939)? Appellant contends that since Mossman was actually relieving a co-pilot on the day he was killed, he must be considered as having been employed at said time as a co-pilot, and since a co-pilot's salary was $2700 per year, Mossman was at said time not within the exclusion clause of said Section 3305. We find no justification for this view, either in the Act itself, or in the decisions construing the Act. It would lead to absurd results. If adopted, we would be compelled to rule that his *status* would change from day to day, depending upon whether he relieved a first pilot or a co-pilot. The decisive question is, what were the annual earnings of the employee after his grade was changed to reserve pilot? This must be determined under Section 3320, Revised Statutes of Missouri 1929 (now Sec. 3710, R. S. Mo. 1939). [Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S. W. (2d) 1046.] Paragraphs (a) and (b) of said Act are not applicable for the reasons hereinbefore stated. Paragraph (c) is not applicable because no remove pilots were employed by the Chicago and Southern Air Lines, Inc., or by any other air transport company, during the full year preceding Mossman's death.

The next method of computing the compensation is furnished by paragraph (d) of said section, which provides that with reference to those ''employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the

average daily earnings in such computation.'' This method must be used in this case. [Hartman v. Union Electric Light & Power Co., 331 Mo. 230, 53 S. W. (2d) 241; Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 68 S. W. (2d) 715.]

The record shows that Mossman, as reserve pilot, earned $826.11 in the sixty-six days between June 1, 1936, and August 5, 1936. This gives a daily wage of $12.51 during that period. Three hundred times this daily wage gives an annual wage of $3753. This figure brings said employee within the exclusion clause of Section 3305, Revised Statutes of Missouri 1929 (now Sec. 3695, R. S. Mo. 1939). The Commission, therefore, was right in holding that Russell C. Mossman was not an employee of said Chicago and Southern Air Lines, Inc., within the meaning and intent of the Workmen's Compensation Act, and the judgment appealed from must, accordingly, be affirmed. It is so ordered. *Hughes, P. J.*, and *McCullen, J.*, concur.